Steven Jay SANDEN, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 90–1593.

United States Court of Veterans Appeals.

Submitted Sept. 13, 1991.

Decided Jan. 21, 1992.

Steven Jay Sanden, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and R. Randall Campbell, Washington, D.C., were on the pleadings, for appellee.

Before HOLDAWAY, IVERS and STEINBERG, Associate Judges.

HOLDAWAY, Associate Judge:

Appellant, Steven Jay Sanden, appeals a decision of the Board of Veterans' Appeals (BVA or Board) which denied him entitlement to service connection for a chronic acquired psychiatric disorder. *Steven J. Sanden*, BVA 90–33109 (Sept. 25, 1990). The BVA found that a chronic acquired psychiatric disorder was not shown during active military service, or within one year after service. The Court holds that the decision of the BVA was not clearly erroneous, and that the BVA provided adequate reasons or bases for its decision. Therefore, we affirm the decision of the BVA.

FACTS

The appellant entered the Air Force on February 13, 1974. He was found medically qualified for service upon examination. On March 16, 1975, appellant voluntarily admitted himself for treatment at the North Dakota State Hospital, a civilian facility, where he was diagnosed with "Depressive Neurosis with features of anxiety with the use of alcohol [and narcotics]." He was sent back to the Air Force Base (AFB) mental health center, where he had been receiving treatment since February

14, 1975, for alcohol, marital problems, and depression. On April 3, 1975, an evaluation of appellant was made by a psychiatric social worker and the chief of the neuropsychiatric service at the AFB mental health center. They found that the appellant "has no psychiatric disease that is medically disqualifying for general military service ... and there are not sufficient grounds to warrant the diagnosis of Character and Behavior Disorder." Appellant was diagnosed with "Adjustment Reaction of Adolescence associated with immaturity, impulsivity, and poor judgment." It was recommended he be trained in an Air Force career field other than the one in which he was then serving.

On April 18, 1975, the Air Force conducted a separation exam. The exam report indicated "Depression, nervous trouble, followed by Mental Health 2½ months for depression. Examinee states nervous about health.... examinee denies family history of ... psychosis, use of ... drugs ... any other history of ... disturbances of consciousness...." He was separated from service on April 29, 1975, at eighteen years of age.

On May 14, 1976, one year and three weeks after separation from service, the appellant again entered the North Dakota State Hospital. He was diagnosed as suffering from "passive aggressive personality, possible marital maladjustment, [and] habitual excessive drinking with drug abuse." The appellant was readmitted on July 18, 1976, nearly fifteen months after separation from service. Upon discharge, the same diagnosis was rendered as during his May 1976 hospitalization. Chronic anxiety neurosis was also listed as a diagnosis. On September 13, 1976, appellant again entered the North Dakota State Hospital and was given a final diagnosis of passive aggressive personality, and habitual excessive drinking with drug abuse.

From June 22, 1978, to September 5, 1978, appellant entered the Veterans' Administration (now Department of Veterans Affairs) (VA) Medical Center (MC) in St. Cloud for alcoholic rehabilitation. He left the program with readmission to that facility not advised.

On December 22, 1980, appellant was given a Minnesota Multiphasic Personality Inventory. A consulting psychologist who reviewed the examination noted that appellant "is probably depressed, and it is likely that he has been for some time and that the depressive signs and behaviors are more o[r] less an essential part of his character make up." The impression given was "moderate maladjustment which is probably fairly intense but also fairly longstanding." Appellant was also found likely to be quite depressed with passive aggressive and passive dependent features.

Records from May 21, 1986, to May 30, 1986, show outpatient treatment at a VAMC. The appellant was found to be a very disturbed individual, who was having active hallucinations. The physician suspected that the veteran may have schizophrenia. A "problem list" on a VA medical facility form is also of record, with notations from March and April 1987 indicating "possible Schizophrenia ... possible PTSD [post-traumatic stress disorder] ... Depression, Psychic ... Generalized Anxiety Disorder ... [and] Hx [history of] alcohol addiction."

Appellant filed a claim on January 30, 1987, with the VA Regional Office (VARO) for a nervous condition "which started while serving in the Air Force." In a rating decision of March 11, 1987, the VARO made two findings: (1) that depressive neurosis was not found on discharge from service, and (2) that adjustment reaction of adolescence, the diagnosis rendered in-service by the AFB mental health center, was not considered a disability under the law. Appellant's claim was therefore denied. Another claim was again denied by the VARO on April 9, 1987. A BVA decision of December 18, 1987, continued the denial of service connection for a chronic acquired psychiatric disorder, finding that appellant's current psychological disorder was unrelated to his military service.

On November 13, 1989, appellant sought to reopen his claim by submitting, inter alia, a statement dated November 8, 1989,

from his treating psychiatrist, a private practitioner, who diagnosed appellant with "bipolar disorder, depressed with psychotic features." A secondary diagnosis was dysthymia with a history of alcohol abuse, in remission. Dysthymia is also known as "depressive neurosis." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 230 (3d ed. rev. 1987). Onset was noted to be during service on March 16, 1975, the date the North Dakota State Hospital diagnosed appellant as suffering from "depressive neurosis." The VARO denied appellant's claim on December 5, 1989, stating, "A review of the total record does not establish service connection for a psychiatric condition."

On May 16, 1990, appellant presented sworn testimony in a hearing before the VARO. The hearing officer found that service connection was not established for a psychiatric condition. Appellant appealed his claim to the BVA.

On September 25, 1990, the BVA denied appellant entitlement to service connection. The Board found that a chronic acquired psychiatric disorder was not manifest during active service, and that a chronic acquired psychiatric disorder was not manifest within one year after separation from active service. Appellant appeals this decision of the BVA.

In his informal brief, appellant argues (1) that the BVA did not correctly find that he was diagnosed with depressive neurosis while in service; (2) that he should be granted service connection for his present psychiatric conditions, bipolar disorder and depressive neurosis, because they originated in his Air Force service; (3) that the in-service diagnosis of adolescent adjustment reaction was incorrect and refuted by the subsequent medical history; and (4) that the BVA incorrectly denied entitlement to service connection in the face of the treating physician's opinion in 1989 that appellant's mental illness had its onset in March 1975, during service.

The Secretary of Veterans Affairs (Secretary) argues that the decision of the BVA was supported by the evidence of record. The Secretary also argues that the BVA correctly performed its fact-finding function and was not clearly erroneous in according less weight to the 1989 opinion of appellant's psychiatrist because it was not substantiated by the evidence.

## ANALYSIS

### I.

Depressive neurosis and bipolar disorder are compensable disorders under 38 C.F.R. § 4.132 (1991) (Diagnostic Code 9405 and 9206, respectively). Depressive neurosis is listed as "dysthymic disorder" under Diagnostic Code 9405. *Id.* For a veteran to be entitled to receive compensation for these disorders, they must have been incurred in or aggravated by active service. 38 U.S.C. § 1131 (formerly § 331). A veteran would also be entitled to service connection for bipolar disorder if the disorder becomes manifest to a degree of at least 10% within one year from the date of separation from service. 38 U.S.C. § 1112 (formerly § 312), 38 C.F.R. § 3.309 (1991). Under 38 U.S.C. § 1112, certain chronic disorders are accorded a presumption of service connection if the disorder is manifest to a degree of at least 10% within one year after separation from service. Section 3.309 of title 38, of the Code of Federal Regulations, lists the disorders, mental as well as physical, which are presumed to be service-connected. Bipolar disorder is a psychosis and is accorded the presumption of service connection. 38 C.F.R. § 4.132, Diagnostic Code 9206; 38 U.S.C. § 1112; 38 C.F.R. § 3.309. Depressive neurosis is not a psychotic disorder under the ratings schedule, and therefore does not warrant presumptive service connection. 38 C.F.R. § 4.132, Diagnostic Code 9405; 38 U.S.C. § 1112; 38 C.F.R. § 3.309. Mental deficiency and personality disorders are not considered "disabilities" under the ratings schedule and are therefore not compensable. 38 C.F.R. § 4.127 (1991); *see also* 38 C.F.R. § 3.303(c) ("Congenital or developmental defects, ... personality disorders and mental deficiency as such are not diseases or injuries within the meaning of applicable legislation.").

## II.

█ The BVA concluded that a chronic psychiatric condition was not manifest during service, and was not manifest within one year after separation from service. In reaching its conclusion, the BVA weighed the credibility of the treating psychiatrist's opinion as to the date of onset and service incurrence, against the other evidence of record. The BVA specifically discussed the North Dakota State Hospital diagnosis of March 1975, the records from the three separate admissions in 1976, the AFB mental health center diagnosis, and the 1986 outpatient report. *Sanden*, BVA 90–33109, at 5. The BVA also discussed the 1989 opinion of appellant's psychiatrist, the 1987 "problem sheet," and the Minnesota Multiphasic Personality Inventory. *Sanden*, BVA 90–33109, at 6. The Board carefully related appellant's current diagnoses and the 1989 opinion from appellant's physician as to the date of their incurrence to all the evidence of record. *Id.* The first evidence of a chronic psychiatric disorder, the BVA found, was on the 1986 outpatient report where schizophrenia was suspected, over ten years after separation from service. *Sanden*, BVA 90–33109, at 6. The BVA found that the in-service psychological problems, as well as those in 1976, were attributable to adjustment reaction of adolescence, personality disorder, and alcohol and drug abuse, not to a chronic acquired psychiatric disorder. *Sanden*, BVA 90–33109, at 5.

█ The BVA, as factfinder, is required to weigh and analyze all the evidence of record. Decisions of the BVA shall be based on the entire record and upon consideration of all evidence and applicable provisions of law and regulation. 38 U.S.C. § 7104 (formerly § 4004). *See also* 38 C.F.R. § 3.303(a) (1991). The BVA's task also includes determining the credibility of the evidence. *Smith v. Derwinski*, 1 Vet.App. 235, 237 (1991) (determining the credibility of evidence is a function for the BVA, not the Court of Veterans Appeals); *Ohland v. Derwinski*, 1 Vet. App. 147, 149 (1991) (remanded in part for failure of the BVA to analyze the credibility or probative value of the evidence). The BVA found that the 1975 in-service diagnosis of depressive neurosis rendered by the North Dakota State Hospital was credibly refuted by the AFB mental health center diagnosis. The BVA cited the in-service history of diagnoses and treatment and concluded that "there was no evidence suggesting an acquired psychiatric disorder until 1986...." In its "Discussion and Evaluation" section, the BVA stated:

> [T]he veteran was admitted to the North Dakota State Hospital in March 1975 for complaints of depression associated with insomnia, crying spells, feelings of hopelessness, inadequacy, and loss of interest. His symptoms were aggravated by alcohol and drugs. He was found to be very immature and childish. The diagnosis at discharge was depressive neurosis. The veteran was evaluated at a military psychiatric facility the following month, at which time the diagnosis was adjustment reaction of adolescence associated with immaturity, impulsivity and poor judgment. After service the veteran was evaluated during three separate admissions to the North Dakota State facility in 1976, when his complaints were attributed to a personality disorder and alcohol and drug abuse.

*Sanden*, BVA 90–33109, at 5.

The BVA also found that the 1989 psychiatrist's opinion that appellant's condition arose in service was not supported by the record. In support of this conclusion the BVA stated:

> According to the statements from [appellant's physician] the veteran has an established diagnosis of bipolar disorder, depressed, with psychotic features. While the Board is willing to accept the general proposition that the disorder has been present for a number of years, the conclusion that it has been manifest for 15 years is not substantiated in, and is in fact contradicted by, the prior clinical record. The characterological aspect of the veteran's symptomatology and the effects of substance abuse have been manifest at each of the prior evaluations. The outpatient notation of April 1987 noting depression adds no information con-

cerning the nature, severity or chronicity of the early manifestations of the veteran's psychiatric disease. Likewise, the report of psychological testing [the Minnesota Multiphasic Personality.Inventory] does not strengthen the veteran's claim. The Board has reviewed all the evidence of record ... but is unable to find that a new factual basis warranting the granting of service connection has been presented.

*Sanden,* BVA 90–33109, at 6.

 While it is true that the BVA is not free to ignore the opinion of a treating physician, the BVA is certainly free to discount the credibility of that physician's statement. *Willis v. Derwinski,* 1 Vet. App. 66 (1991) (the conclusion of an examining psychiatrist is a medical conclusion, one which the BVA is not free to ignore or disregard); *Colvin v. Derwinski,* 1 Vet. App. 171, 175 (1991) (the BVA is not compelled to accept the opinion of a physician but, having reached a contrary conclusion, is required to state its reasons and point to a medical basis for that decision). The Court can overturn findings of fact made by the BVA only if those findings, including findings regarding credibility, are clearly erroneous. *Jones v. Derwinski,* 1 Vet. App. 210, 217 (1991); *Gilbert v. Derwinski,* 1 Vet.App. ·49, 52 (1990). If the BVA's account of the evidence is plausible in light of the entire record, the Court may not reverse it. *Jones,* 1 Vet.App. at 217; *Gilbert,* 1 Vet.App. at 52.

It is the holding of this Court that the BVA did not commit reversible error in not accepting the opinion of the treating psychiatrist or in finding that appellant had not shown a chronic acquired psychiatric disorder either in service or within one year after separation. The BVA's factual findings are plausible. The BVA also provided adequate reasons or bases for its decision. *See Gilbert,* 1 Vet.App. at 56. Accordingly, the Court AFFIRMS the decision of the BVA.