**Rodney M. STADIN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 94–466.**

United States Court of Veterans Appeals.

Oct. 26, 1995.

Stephen L. DeVita, Dayton, OH, was on the brief for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel; and John D. McNamee were on the brief for appellee.

Before KRAMER, FARLEY, and IVERS, Judges.

IVERS, Judge:

Rodney M. Stadin appeals a May 11, 1994, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for an acquired psychiatric disorder. *Rodney M. Stadin, Jr.*, BVA 94–06719 (May 11, 1994). The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will affirm the May 1994 decision of the BVA.

## I. Factual Background

The appellant served on active duty in the United States Armed Forces for three periods: (1) from January 28, 1971, to February 6, 1976; (2) from March 31, 1976, to March 30, 1979; (3) and from February 1, 1981, to March 11, 1982. Record (R.) at 22, 24, 26, 29, 32–34. A March 2, 1979, report of medical examination upon separation indicated no psychiatric abnormalities or symptoms. R. at 36–37.

The appellant's first two periods of active service included service in Germany. At the conclusion of his second period of active service in 1979, the appellant was stationed in California. R. at 104. Subsequently, he moved to Germany. *Ibid.* On December 4, 1980, the appellant was seen by a German neurologist, Dr. Dieter Kluge, who indicated that the appellant had experienced low spirits, periodic states of depression, lack of energy and drive, resignation, and disturbed sleep since his return to Germany. R. at 161.

The appellant was also treated by two other German psychiatrists, Dr. W. Schumacher and Dr. E. Schoenbrunn, from December 18 to December 23, 1980, and from December 30, 1980, to January 6, 1981. The diagnosis given was "a paranoid psychosis of the class of schizophrenia." R. at 163.

In a March 1981 service report of medical history, a March 1981 service report of medical examination, an October 1981 service report of medical history, and an October 1981 service report of medical examination, the appellant did not indicate that he had experienced any psychiatric symptoms or that he had received any treatment for such symptoms. R. at 113–20.

In December 1981, the appellant reported that he began experiencing depression, confusion, and sadness. R. at 123. A December 19, 1981, Navy emergency care and treatment record indicated that the appellant was experiencing depressive reaction due to separation from family. *Ibid.*

According to a February 9, 1982, Navy Medical Board report, the appellant was recommended for separation due to disability consisting of schizophrenia, paranoid type, subchronic, with acute exacerbation. R. at 103. The accompanying evaluation indicated that his problems began in Germany when his wife filed for divorce. R. at 104. The appellant was also said to have "felt that [his

wife's] family was trying to get rid of him and that the villagers were angry at him because he was receiving unemployment money from the government." R. at 104–05. Regarding the appellant's level of disability, the Medical Board report stated:

After an adequate period of observation, evaluation and treatment, a conference of staff psychiatrists reviewed the available records and current findings and agreed that the service member suffers from a mental illness of psychotic proportions that does preclude his rendering any further useful military service.

Therefore, on 20 January 1982, the primary diagnosis was revised to Schizophrenia, Paranoid Type, Subchronic, with Acute Exacerbation, # 295.33, manifested by bizarre delusions with persecutory content, auditory hallucinations on several occasions, deterioration from a previous level of functioning, and continuous signs of illness for six months with reemergence of psychotic symptoms in an individual with a subchronic course who has been in the residual phase of the illness.

Precipitating stress—mild. Pre-service predisposition—severe. Present condition did exist prior to enlistment. Military impairment severe—unable to perform full duty.

It is further the opinion that the patient's psychiatric condition presently manifests itself by mild interference with social adaptability and mild interference with his civilian industrial adaptability.

Follow-up outpatient psychiatric care was recommended. Continued psychopharmacological medication was advised.

The Medical Board agrees with the above findings and is of the opinion that the patient is unable to perform further military service as a result of a physical disability and that *the physical disability existed prior to enlistment and has not progressed at a rate greater than is usual for such disorders and, therefore, is considered to have neither [been] incurred in nor to have been aggravated by a period of active duty.* The Medical Board is further of the opinion that the service member fails to fulfill the minimal standards for enlistment or induction as set forth in A.R. 40–501, Chapter 2. The Board recommends that the service member be discharged in accordance with BUMED INSTR 1910.2G.

The Medical Board is further of the opinion that the patient has now received the maximum benefits of military hospitalization and treatment and that that has not restored the patient to a duty status. At the present time the service member is considered fully competent to be discharged to his own custody, does not constitute a menace to himself or others, and is not likely to become a public charge.

R. at 107–08 (emphasis added). A notation on a February 22, 1982, service medical record reported that the appellant's schizophrenia was in remission. R. at 136.

On March 22, 1982, the appellant filed an application with a VA regional office (RO) seeking compensation for paranoid schizophrenia. R. at 154. It appears from the record on appeal that the claim was denied on April 14, 1982. *See* R. at 202 (November 1986 RO rating decision referring to prior denial of service connection for schizophrenia, paranoid type); *see also* R. at 326 (RO hearing officer reviewing claims file in 1991). The appellant did not appeal this determination, which therefore became final. 38 U.S.C. § 7105(b)(1), (c); 38 C.F.R. §§ 20.200, 20.302 (1994); *see Fluker v. Brown,* 5 Vet. App. 296, 297 (1993).

On June 13, 1989, the appellant sought to reopen his claim for a nervous condition. R. at 215. On December 12, 1989, the RO denied reopening of the claim. R. at 255. The appellant also indicated that VA should contact his father-in-law in Germany to ascertain the name of a particular physician in Germany. R. at 266. The RO responded that the appellant would be required to provide that evidence on his own. R. at 268. When the appellant did not respond, the RO notified him that his claim was disallowed. R. at 271.

The appellant sought to reopen his claim for service connection for schizophrenia on February 1, 1991. R. at 275. In a May 8,

1991, rating decision, the RO did not reopen the claim. R. at 277.

In a September 11, 1991, VA Form 1–9 (Appeal to BVA), the appellant wrote that he had experienced psychotic symptoms in the fall of 1979 when he broke a window in his house in Germany. R. at 295. He also wrote that he had experienced anxiety attacks prior to that episode. R. at 296. On September 11, 1991, the appellant testified at a personal hearing before the RO. R. at 298–320. The appellant testified that he felt anxiety as soon as he was separated from service in March 1979. R. at 301. He also stated that he left Germany without telling anybody of his destination and flew to California in the summer of 1979. R. at 302–03. He stated that he returned to Germany in 1979 when he learned that his wife was pregnant. R. at 302. At the hearing, he admitted that he had lied on his 1981 Navy enlistment medical history report. R. at 310. He also testified that his symptoms of anxiety, restlessness, and hostile behavior intensified during his third period of active service. R. at 310–11. In a September 16, 1991, decision, the RO hearing officer continued the denial of service connection on the ground that the appellant's evidence was not new and material. R. at 326–27.

The appellant's representative submitted a statement in which he argued that, under the relevant rating criteria, the appellant's condition must have been present at least six months prior to a diagnosis of schizophrenia and that the appellant had also exhibited symptoms of schizophrenia before then. R. at 340.

On March 29, 1993, the Board remanded the claim for the RO to seek to obtain records of treatment in 1981 at the Ventura Mental Health Clinic in Ventura, California. R. at 357–58. On remand, records from the Ventura County General Hospital were obtained. R. at 363–67. A discharge summary prepared on April 22, 1981, indicated that the appellant had quit a job in Germany due to stress and pressure one and half years earlier (i.e., at some point in late 1979). R. at 365. The final diagnosis was schizoaffective disorder. *Ibid.*

On July 26, 1993, the RO denied reopening on the ground that the appellant had not submitted new and material evidence. R. at 371. On May 11, 1994, the Board reopened the claim but denied service connection for an acquired psychiatric disorder on the merits. *Stadin,* BVA 94–06719, at 8.

## II. Analysis

The Court reviews the Board's determinations with respect to the Board's adjudication of the merits of the reopened claim under the "clearly erroneous" standard of review. *Stanton v. Brown,* 5 Vet.App. 563, 567 (1993). The Board must base its decisions on "all evidence and material of record," 38 U.S.C. § 7104(a), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C. § 7104(d)(1). *See Douglas v. Derwinski,* 2 Vet.App. 435, 438–39 (1992) (en banc), *vacating in part on other grounds,* 2 Vet.App. 103 (1992); *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990). Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Gilbert,* 1 Vet. App. at 57.

In this case, the appellant argues that his schizophrenia was incurred in or aggravated during a period of active service. Specifically, the appellant raises two arguments: (1) that schizophrenia became manifest to a compensable degree within the one-year presumptive period following separation from his second period of active service in March 1979, *see* 38 U.S.C. § 1131; 38 C.F.R. §§ 3.307, 3.309(a) (1994); and (2) that schizophrenia was aggravated during the appellant's third period of active service, *see* 38 U.S.C. § 1153; 38 C.F.R. § 3.306 (1994).

### 1. Presumptive Service Connection

■ Service connection is available for chronic diseases which become manifest to a degree of at least 10% within one year after separation from service. 38 U.S.C. §§ 1101(3), 1112(a)(1), 1137; *see Sanden v. Derwinski,* 2 Vet.App. 97, 99 (1992); *Caldwell v. Derwinski,* 1 Vet.App. 466, 468–69

(1991). A claim must be supported by "medical evidence, competent lay evidence or both." 38 C.F.R. § 3.307(b) (1994); *see Caldwell*, 1 Vet.App. at 469.

In the instant case, the Board addressed all the evidence of record and provided reasons or bases for its findings. In particular, the Board evaluated the credibility of the appellant's statements regarding the onset of symptomatology and found the appellant not to be credible. *See Sanden*, 2 Vet.App. at 101; *Smith v. Derwinski*, 1 Vet.App. 235, 237 (1991) (determination of credibility is function of Board); *cf. Ohland v. Derwinski*, 1 Vet.App. 147, 149–50 (1991) (remanding where Board failed to analyze credibility or probative value of claimant's evidence). The Board pointed to various inconsistencies in the appellant's chronology of events as well as, more generally, the fact that the appellant admitted that he had lied in 1981 in connection with his reenlistment when he denied having been treated for any psychiatric disorders. R. at 310.

■ Additionally, while the appellant is certainly capable of providing evidence of symptomatology, a layperson is generally not capable of opining on matters requiring medical knowledge, such as the degree of disability produced by the symptoms or the condition causing the symptoms. *See Robinette v. Brown*, 8 Vet.App. 69, 74 (1995); *Heuer v. Brown*, 7 Vet.App. 379, 384 (1995); *Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992); *see also Harvey v. Brown*, 6 Vet.App. 390, 393–94 (1994).

■ The appellant argues that the case should be remanded for the Board to obtain an independent medical opinion regarding the onset of the schizophrenia. However, the only support for a finding that the appellant's condition first manifested during the one-year presumptive period is the appellant's own statements of symptomatology, which the Board found not credible. Therefore, the only remaining credible evidence of record establishes a definitive diagnosis of schizophrenia in December 1980.

Even assuming the accuracy of the appellant's argument, raised during the course of the adjudication below, that a diagnosis of schizophrenia requires manifestations for at least six months prior to the actual diagnosis, the onset of schizophrenia based on this argument would still fall outside the one-year presumptive period.

Furthermore, the appellant has not produced evidence that his condition was disabling to a degree of at least 10% by March 1980. Indeed, a December 1980 evaluation from Dr. Kluge indicated that "[f]rom a mental point of view Mr. Stadin seemed normal during the examination; however, the information about depression is totally credible." R. at 161. Even though the letters from the German physicians related a history of symptoms in 1979 (R. at 161, 163), the letters are too inconclusive regarding the degree of disability to support the assertion that the appellant's schizophrenia was at least 10% disabling. Thus, there is no evidence that the appellant's condition met the criteria set forth for presumptive service connection. Under these circumstances, an independent medical opinion would not be of assistance in determining the onset of schizophrenia or when the condition became at least 10% disabling. *See Crowe v. Brown*, 7 Vet.App. 238, 246 (1994) (independent medical opinion was necessary to determine inception of veteran's asthma in light of "medical judgment," history with "regard to clinical factors pertinent to the basic character, origin and development of such injury or disease," and "thorough analysis of the evidentiary showing and careful correlation of all material facts, with due regard to accepted medical principles pertaining to the history, manifestations, clinical course, and character of the particular injury or disease or residuals thereof" under 38 C.F.R. § 3.304(b)(1) (1994)). Of course, if the appellant produces competent medical evidence addressing the issue of the onset of schizophrenia and the degree of disability during the one-year period following his second period of active service, he will be free to seek reopening of his claim.

## 2. Aggravation

The appellant's second argument is that his condition, which preexisted the third and final period of active service, was aggravated during that third period of service. In this case, both the appellant and the Secretary

recognize that the condition preexisted the third period of service. Indeed, the record includes the German physicians' diagnoses of paranoid schizophrenia, which predated the appellant's reenlistment in the Navy. *See* 38 U.S.C. § 1132 (presumption of sound condition applies "except as to defects, infirmities, or disorders noted at the time of the examination, acceptance and enrollment, *or where evidence or medical judgment is such as to warrant a finding that the disease or injury existed before acceptance and enrollment*") (emphasis added); *Paulson v. Brown,* 7 Vet. App. 466, 468 (1995). The diagnoses in late 1980 and early 1981 "warrant a finding that [schizophrenia] existed before acceptance and enrollment." 38 U.S.C. § 1132.

■ Thus, the sole remaining issue is whether the appellant's preexisting schizophrenia was aggravated during the third period of service. On this issue, the Board's decision is not so thorough as the portions of the decision that addressed the issue of presumptive service connection.

The February 1982 Navy Medical Board reported that the appellant's schizophrenia had deteriorated and that psychotic symptoms had reemerged in the appellant, who was described as "an individual with a subchronic course who [had] been in the residual phase of the illness." R. at 107. In its May 1994 decision, the BVA simply stated:

> [T]here is no evidence that aggravation of the veteran's psychiatric condition occurred during his third term of service. Although the veteran testified that his psychiatric condition "intensified," he also reported that at the time of his reenlisting he was already hallucinating, paranoid, and psychotic. No medical opinion has been offered indicating that the veteran experienced a permanent increase in disability as a result of his third period of service and we find no objective evidence to support such a contention.

*Stadin,* BVA 94–06719, at 8. In the context of the BVA's analysis, it appears that the BVA used the term "aggravation" in its general sense, referring to "any increase in disability," as opposed to the specific meaning ascribed to the term under 38 U.S.C. § 1153. *See Allen v. Brown,* 7 Vet.App. 439, 445

(1995) (en banc). Given the description of the appellant's condition in the 1982 Medical Board report, the first sentence of the passage quoted above is incorrect. The appellant's condition appears to have worsened during the third period of service.

However, the third sentence of the passage quoted above is accurate. The BVA's conclusion that the appellant's condition did not undergo "a permanent increase in disability *as a result of his third period of service*" is supported by the Medical Board report itself. That report stated that the appellant's schizophrenia "has not progressed at a rate greater than is usual for such disorders." R. at 108. Therefore, the same report that supports a finding of an increase in disability during service also supports a "specific finding that the increase in disability is due to the natural progress of the disease." 38 U.S.C. § 1153; *see* 38 C.F.R. § 3.306(b) (1994) ("Clear and unmistakable evidence (obvious or manifest) is required to rebut the presumption of aggravation where the preservice disability underwent an increase in severity during service."); *see also Hensley v. Brown,* 5 Vet.App. 155, 160–61 (1993). Assuming that the appellant's condition did in fact deteriorate during service, the Medical Board report would also have been sufficient to rebut the presumption of aggravation.

Under these circumstances, where a remand to the Board for readjudication in light of the statutory and regulatory structure would not produce any benefit to the appellant, the Board's failure to discuss whether the apparent increase in disability during the third period of active service was due to the natural progress of the disease is harmless. *See* 38 U.S.C. § 7261(b) (Court shall take due account of rule of prejudicial error); *Wray v. Brown,* 7 Vet.App. 488, 493 (1995) (failure to discuss every expert opinion was harmless error where remand would not benefit claimant); *Tedeschi v. Brown,* 7 Vet.App. 411, 414 (1995) (lack of medical evidence of causation coupled with evidence of non-service-connected cause provided plausible basis for Board's decision, so that Board's failure to provide reasons or bases for selection of diagnostic codes was harmless error); *Soyini v. Der-*

*winski*, 1 Vet.App. 540, 546 (1991) (remand for clearer statement of "reasons or bases" under 38 U.S.C. § 7104(d)(1) was not required where overwhelming evidence supported Board's decision); *see also Allen*, 7 Vet.App. at 450 (only basis for determining that failure to provide reasons or bases was not prejudicial to claimant would be where overwhelming evidence supported result reached by Board). In addition, "[s]ince here 'it is clear that the . . . agency would have reached the same ultimate result, we do not improperly invade the administrative province by affirming.'" *Ward v. Merit Systems Protection Bd.*, 981 F.2d 521, 528 (Fed. Cir.1992) (quoting *Salt River Project Agric. Improvement & Power Dist. v. United States*, 762 F.2d 1053, 1061, n. 8 (D.C.Cir. 1985)); *see also Tallman v. Brown*, 7 Vet. App. 453, 466 (1995). Therefore, even though the Board did not discuss all the evidence relating to aggravation, a remand for that purpose would produce no benefit to the appellant.

## III. Conclusion

Accordingly, upon consideration of the record, the appellant's brief, and the Secretary's brief, the Court AFFIRMS the May 1994 decision of the BVA.