Citation Nr: 1722252 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 13-24 046 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Whether new and material evidence has been received to reopen a previously denied claim of service connection for tinnitus.


REPRESENTATION

Appellant represented by: National Association of County Veterans Service Officers (NACVSO).


ATTORNEY FOR THE BOARD

A. Cryan, Counsel



INTRODUCTION

The Veteran served on active duty from June 1965 to June 1969.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Newark, New Jersey.

The Veteran's claims were remanded in a May 2015 Board decision. 

The issue of whether new and material evidence has been received to reopen a claim of entitlement to service connection for tinnitus being remanded is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The evidence of record shows that the Veteran clearly and unmistakably had bilateral hearing loss prior to service.

2. The Veteran's bilateral hearing loss did not undergo a chronic or permanent worsening during service, beyond the natural progress of the condition.


CONCLUSION OF LAW

The Veteran does not have a bilateral hearing loss disability that is the result of disease or injury incurred in or aggravated during active military service. 38 U.S.C.A. §§ 1101, 1110, 1111, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.306, 3.307, 3.309, 3.385 (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was provided. Additionally, neither the Veteran, nor his representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, adjudication of his claim at this time is warranted. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Service treatment records and VA treatment records have been obtained. The Veteran declined the opportunity to testify at a hearing before the Board. 

With regard to the claim being decided herein, the Board last remanded the claim to obtain an addendum audiometric opinion and to obtain additional VA treatment reports. An addendum opinion was obtained from a VA audiologist in June 2016 and additional VA treatment reports were obtained. As such, because the Board's order was fully complied with, there is no prejudice for the Board to proceed. See Stegall v. West, 11 Vet. App. 268 (1998). 

The Veteran was provided with a VA examination prior to the Board remand (the reports of which have been associated with the claims file). The case was remanded to obtain an additional audiometric examination in order to consider the in-service audiometric findings. The Board finds the addendum audiometric opinion to be adequate for rating purposes. The VA examiner had a full and accurate knowledge of the Veteran's hearing loss disability and contentions, and grounded the findings on objective testing and the evidence of record. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Moreover, the Veteran has not objected to the adequacy of the examination conducted during this appeal. See Sickels v. Shinseki, 643 F.3d, 1362, 1365-66 (Fed. Cir. 2011). 

As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.

The Veteran claims that he warrants service connection for hearing loss. Specifically, he contends that his pre-existing hearing loss was aggravated by service. 

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. §§ 3.303, 3.304.

Establishing service connection requires evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

Service connection may also be granted for certain chronic diseases, including sensorineural hearing loss when such disability is manifested to a degree of 10 percent or more within one year of discharge from service. See 38 U.S.C.A. §§ 1101, 1112(a); 38 C.F.R. §§ 3.307, 3.309; see Fountain v. McDonald, 27 Vet. App. 258 (2015) (holding that tinnitus is chronic disease under 38 U.S.C.A. § 1101 (West 2014); 38 C.F.R. § 3.309(a) (2016). 

When chronic diseases are at issue, the second and third elements for service connection may alternatively be established by showing continuity of symptomatology. See Walker v. Shinseki, 701 F.3d 1331 (Fed. Cir. 2013).

A Veteran who served in the active military, naval, or air service after December 31, 1946, is taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C.A. § 1132 (West 2014). Only those conditions recorded in examination reports can be considered as noted and a history of preservice existence of conditions recorded at the time of examination does not constitute a notation of such conditions. 38 C.F.R. § 3.304(b) (2016). Determination of the existence of a pre-existing condition may be supported by contemporaneous evidence, or recorded history in the record, which provides a sufficient factual predicate to support a medical opinion or a later medical opinion based upon statements made by the Veteran about the pre-service history of the condition. Miller v. West, 11 Vet. App. 345 (1998); Harris v. West, 203 F.3d. 1347 (Fed. Cir. 2000).

A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. 38 C.F.R. § 3.306 (2016).

To rebut the presumption of sound condition for conditions not noted at entrance into service, VA must show by clear and unmistakable evidence both that the disease or injury existed prior to service and that the disease or injury was not aggravated by service. VAOPGCPREC 3-03 (July 16, 2003), 70 Fed. Reg. 23027 (May 4, 2005). A lack of aggravation may be shown by establishing that there was no increase in disability during service or that any increase in disability was due to the natural progress of the preexisting condition. Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004); 38 U.S.C.A. § 1153 (West 2014).

Impaired hearing will be considered a disability for VA purposes when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater, or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater, or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385 (2016).

The Board notes that prior to November 1967, audiometric test results were reported in standards set forth by the American Standards Association (ASA). Since November 1, 1967, those standards have been set by the International Standards Organization (ISO)-American National Standards Institute (ANSI). VA utilizes ISO-ANSI standards in determining hearing loss disabilities.

At the Veteran's June 1965 entrance examination, audiometric testing was conducted. The table below shows the ASA measurements recorded in service, with the comparable ISO-ANSI measurements in adjacent parentheses. 




HERTZ



500
1000
2000
3000
4000
RIGHT
30 (45)
30 (40)
45 (55)
-
40 (45)
LEFT
20 (35)
30 (40)
30 (40)
-
45(50)

When converted to ISO-ANSI standards, the Veteran's entrance examination audiological testing results reveal preexisting bilateral hearing loss for VA purposes. See 38 C.F.R. § 3.385.

The STRs include a July 1965 audiometric evaluation. The table below shows the ASA measurements recorded in service, with the comparable ISO-ANSI measurements in adjacent parentheses. 




HERTZ



500
1000
2000
3000
4000
RIGHT
15 (30)
20 (30)
20 (30)
45 (55)
45 (50)
LEFT
10 (25)
15 (25)
30 (40)
20 (30)
45(50)

An entry dated in April 1969 reflects that the Veteran's audiogram showed severe bilateral high and low frequency hearing loss which the examiner noted was no worse than on enlistment. At that time, two audiometric evaluations were conducted and are as follows:






HERTZ



500
1000
2000
3000
4000
RIGHT
45
55
55
55
50
LEFT
50
50
60
60
55




HERTZ



500
1000
2000
3000
4000
RIGHT
45
50
55
55
50
LEFT
45
45
55
50
50

On June 10, 1969, the Veteran underwent an audiometric evaluation for his separation examination. The Veteran was noted to have subjective hearing loss. The examiner reviewed the Veteran's entrance audiogram and concluded that the Veteran's hearing acuity had not significantly changed from his enlistment. The audiogram card from that examination reveals that of hearing testing were recorded in ISO-ANSI units. The audiogram was as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
40
45
50
55
45
LEFT
40
35
50
50
55

Additional audiometric testing was conducted on June 16, 1969, and expressly states that the results are in ASA units. The table below shows the ASA measurements recorded in service, with the comparable ISO-ANSI measurements in adjacent parentheses.




HERTZ



500
1000
2000
3000
4000
RIGHT
25 (40)
35 (45)
35 (45)
40 (50)
45 (50)
LEFT
25 (40)
30 (40)
35 (45)
40 (50)
45 (50)

Post-service VA treatment reports reflect a diagnosis of bilateral sensorineural hearing loss in January 2006. 

At an October 2011 VA audiometric examination, audiometric testing was conducted and is as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
60
60
60
60
65
LEFT
55
60
60
60
60

Speech recognition scores were 94 percent bilaterally. The examiner diagnosed bilateral sensorineural hearing loss and opined that it was not at least as likely caused by or as a result of service. The examiner noted that the Veteran's entrance audiogram reflected bilateral hearing loss. She indicated that the Veteran had several audiograms conducted during service and specifically referenced the audiograms dated in June 1969. She indicated that the June 10 audiogram represented a temporary threshold shift because the June 16 audiogram showed that the Veteran's hearing was stable when compared to his enlistment audiogram. She concluded that since there was no significant shift in hearing from 1965 to 1969, the Veteran's military noise did not aggravate the Veteran's pre-existing hearing loss. 

In June 2016, the October 2011 VA audiologist reviewed the claims file and opined that the Veteran's pre-existing hearing loss was not aggravated beyond its natural progression by an in-service event, injury, or illness. The examiner noted that she had reviewed numerous audiograms found in the Veteran's service treatment reports and converted the June 1965 entrance audiogram and the June 16, 1969, audiogram from ASA to ISO units. She indicated that both of the June 1969 examinations (the June 10 audiogram was noted to use the ISO protocol) revealed stable loss of hearing when comparing the enlistment examination to the later examinations. She concluded that the Veteran's hearing loss was not aggravated by military service as no significant shift in hearing while the Veteran was in service. 

As noted, bilateral hearing loss was noted at the time of the Veteran's examination, acceptance, and enrollment into her period of service. Audiometric testing obtained at the Veteran's entrance into service found disabling hearing loss. 38 C.F.R. § 3.385 (2016). Consequently, the Board finds that there is clear and unmistakable evidence that the Veteran's condition existed prior to service. However, the Board can conclude that the presumption of aggravation has been rebutted only if there is also clear and unmistakable evidence that the condition was not aggravated by service. 38 C.F.R. § 3.306 (2016).

The Board finds that the competent medical evidence of record supports the finding that the Veteran's condition did not undergo any chronic or permanent increase in severity during service beyond the natural progress of the condition. If a preexisting disability undergoes a permanent increase in severity during service, that increase is presumed to be aggravation unless there is a showing that it represented only the natural progression of the disability.

The Veteran entered service with bilateral hearing loss and left service with the same. The audiograms in service reveal some variations in hearing acuity. However, the October 2011 VA examiner, in both her original examination report, and in the addendum opinion at which time the necessary conversions from ASA to ISO units were considered, concluded that the Veteran's pre-existing hearing loss was not aggravated beyond its natural progression by an in-service event, injury, or illness. She included a complete rationale for her conclusion. There is no competent evidence of record to rebut this conclusion. 

Consequently, the Board finds that the preponderance of the evidence is against a finding that the preexisting bilateral hearing loss disability underwent any increase during service. However, even if any increase in disability is shown, the evidence of record includes specific findings that show that any increase in the preexisting hearing loss disability was merely the natural progress of the disorder.

The Board acknowledges the Veteran's assertions that he currently has bilateral hearing loss as the result of his active duty service. Lay evidence in the form of statements or testimony of the Veteran is competent to establish evidence of symptomatology where symptoms are capable of lay observation. Charles v. Principi, 16 Vet. App. 370 (2002); Layno v. Brown, 6 Vet. App. 465 (1994). The Veteran can attest to factual matters of which he had first-hand knowledge, such as subjective complaints of trouble hearing since service and his assertions are entitled to probative weight. Washington v. Nicholson, 19 Vet. App. 362 (2005). However, the Board ultimately places more probative weight on the opinion of the competent health care specialist who reviewed the record, and found that a relationship between the Veteran's current disability and service was less likely. That health care specialist found that the preexisting bilateral hearing loss either did not increase during service, or that any increase was the result of the natural progress of the condition. The Veteran, as a lay person, is not competent to provide a medical opinion relating any current bilateral hearing loss to his service or any noise exposure during his service. Duenas v. Principi, 18 Vet. App. 512 (2004); Bostain v. West, 11 Vet. App. 124 (1998); Stadin v. Brown, 8 Vet. App. 280 (1995); Woehlaert v. Nicholson, 21 Vet. App. 456 (2007).

Therefore, the Board finds that while the presumption of soundness has been rebutted by clear and unmistakable evidence that the Veteran had bilateral hearing loss prior to entrance to service, that disability did not increase in severity during service beyond the natural progress of the disability during his service. Therefore, service connection may not be granted. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Entitlement to service connection for bilateral hearing loss is denied.


REMAND

A review of the claims file reveals that a remand is unfortunately once again necessary before a decision on the merits of the claim to reopen a claim of entitlement to service connection for tinnitus can be reached. 

The Veteran's claim for tinnitus was previously remanded so that the Veteran could be provided appropriate notice pursuant to Kent v Nicholson, 20 Vet App 1 (2006). This was done in a December 2015 letter. Additional evidence including a VA addendum opinion and additional VA treatment reports were associated with the claims file following the May 2015 remand. However, following May 2015 Board remand, the tinnitus claim was not readjudicated in a supplemental statement of the case (SSOC). 

The AOJ is required to issue a SSOC when, pursuant to a Board remand, it develops evidence or cures a procedural defect. 38 C.F.R. § 19.31c). The only exceptions allowed for by the regulation are if: (1) the only purpose of the remand is to assemble records previously considered by the AOJ and properly discussed in a prior statement of the case or SSOC, or (2) the Board specifies in the remand that a SSOC is not required. 38 C.F.R. § 19.31(c). The Board's 2015 remand falls under neither exception. Accordingly, on remand the AOJ must issue a SSOC after a review of all relevant evidence.

Accordingly, the case is REMANDED for the following action:

Readjudicate the tinnitus claim. If the benefit sought is not granted, provide the Veteran and his representative with a SSOC and allow them an appropriate time to respond thereto before returning the case to the Board. 

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 

action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
KELLI A. KORDICH
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs