# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-575

BURDETT HUSTON, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    July 11, 2003   )

*Theodore C. Jarvi*, of Tempe, Arizona, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randy Campbell*, Assistant General Counsel; *Brian B. Rippel*, Acting Deputy Assistant General Counsel, and *Michael R. Smalls*, all of Washington, D.C., were on the brief for the appellee.

Before FARLEY, IVERS, and STEINBERG, *Judges*.

STEINBERG, *Judge*: The appellant, through counsel, seeks review of a February 21, 2001, Board of Veterans' Appeals (Board or BVA) decision that denied an effective date earlier than June 7, 1991, for his Department of Veterans Affairs (VA) service-connected bilateral hearing loss; that decision included the issue whether a May 15, 1981, VA regional office (RO) decision denying service connection for that condition contained clear and unmistakable error (CUE). Record (R.) at 1-3. The appellant and the Secretary each filed briefs, and the appellant filed a reply brief. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will vacate the Board decision and remand the matter for readjudication.

1

## I. Background

The veteran served honorably in the U.S. Army from June 1941 until September 1945. R. at 11. While serving in World War II, he was injured on March 11, 1945, when shrapnel from a hand grenade struck his left eye and left upper jaw; he was awarded a Purple Heart for his service. R. at 72, 63, 11. On May 15, 1981, the VARO denied, inter alia, the veteran's initial claim for VA service connection for bilateral hearing loss (R. at 48-49); the following evidence was apparently then of record: March 1945 morning reports recording that the veteran was "slightly wounded", a March 1977 VA report of medical examination for disability evaluation that recorded "partial deafness" (R. at 36), a note of "[p]artial deafness . . . when the veteran was hospitalized by VA in June 1980", and an April 1981 audiometric examination report revealing a history of noise exposure in service and recording the shrapnel wound to the left jaw. *See* R. at 166 (November 6, 1995, BVA decision listing evidence before RO at time of its May 1981 decision). The RO sent to the veteran in June 1981 notice of that May 1981 decision. R. at 51-52. Also in June 1981, the veteran filed a Notice of Disagreement (NOD), but only as to a separate eye-disability claim (R. at 53-54), and the RO issued a Statement of the Case (SOC) only as to the eye condition (R. at 57-61). Ten years later, in June and December 1991, the veteran filed two VA Form 1-9s (Substantive Appeal to BVA) (R. at 72-73 (referring to his hearing problem but expressing disagreement only as to RO eye-disability decision), 75-76 (stating veteran would present his case at hearing he requested)); it does not appear that those appeals were ever acted on by the Board.

In June 1993, the veteran filed a claim to reopen his previously and finally disallowed service-connection claim for bilateral hearing loss (R. at 90-91); the RO denied service connection in May 1994 (R. at 104-05) and sent notice of that decision to the veteran in June 1994 (R. at 107). The veteran filed an NOD in June 1994 (R. at 112), and in July 1994 the RO issued an SOC (R. at 115-21) and the veteran filed his Substantive Appeal to the Board (R. at 123-24). In November 1995, the Board reopened the veteran's claim based on new and material evidence, including a February 1977 VA medical record noting that the veteran had told a physician that he had incurred "a grenade wound to the head" during World War II and suffered "subsequent hearing loss, most severe in the right ear", a condition that "was confirmed during this hospitalization by impairment demonstrated on audiogram" (R. at 63). R. at 166-67. The Board granted service

connection (R. at 168, 170), and on December 15, 1995, the RO assigned a 30% rating for that disability, effective June 29, 1993, the date of the veteran's claim to reopen. R. at 174-75. It is unclear from the record on appeal (ROA) when notice of that decision was sent to the veteran; there is no notice attached to the RO decision, although there is a January 10, 1996, letter from the RO notifying the veteran of the grant of service connection for his hearing loss and his amended disability award (taking account of his other service-connected disabilities). R. at 178. On December 18, 1996, the veteran filed an NOD as to the December 1995 RO decision's assignment of the June 1993 effective date. R. at 181-82. In September 1998, the RO issued another decision in which it determined that there was CUE in the December 1995 RO decision and assigned an effective date of June 7, 1991, the date that "the veteran had reopened his claim." R. at 185-87. That date corresponds to the receipt date of a VA Form 1-9 filed by the veteran that largely pertained to his eye claim but also stated that he was told during a 1981 examination that his "hearing loss could have been caused by a sharp blast and the shrapnel from the grenade." R. at 73. Also received on that date (apparently with that form) were the 1977 VA hospital report (R. at 63-64); a letter from a private hearing-aid specialist, attesting to the veteran's hearing loss (R. at 66-67); and a June 1991 statement by an individual identified as a "Veterans Service Officer" asserting that the veteran had made two prior applications for assistance in purchasing hearing aids (R. at 69-70). It appears that the Board considered at least one of these documents to be an informal claim to reopen. *See* R. at 185.

In October 1998, the veteran filed a statement-in-support-of-claim form in which he requested an earlier effective date (EED): "I ask that . . . VA consider the previous final decision a product of [CUE], or that the [EED] should be established based on the old evidence as supplemented by the new and material evidence submitted with the reopened claim." R. at 192. In June 1999, the RO denied an EED because "[n]o revision is warranted in the decision to grant service connection for a hearing loss effective 06-07-91." R. at 195-97. In a December 1999 SOC, the RO framed the issue as "[w]hether the decision to grant service connection for a hearing loss effective 06-07-91 was [CUE]." R. at 202-18. The veteran then appealed to the Board (R. at 220-21), after which the RO issued in February 2000 a Supplemental SOC, which stated that the May 1981 decision had become final on June 1, 1982, one year after the date of notice of that

3

decision. R. at 229-31. In response, the veteran filed a statement-in-support-of-claim form, requesting as an effective date the date of his injury, March 11, 1945. R. at 223.

In the BVA decision here on appeal, the Board defined the issue before it as "[e]ntitlement to an effective date prior to June 7, 1991, for an award of service connection for bilateral hearing loss, to include whether the rating decision of May 15, 1981, was clearly and unmistakably erroneous." R. at 1. The Board then determined that there was no CUE in the May 15, 1981, decision, despite the appellant's contention that the RO had failed to consider 38 U.S.C. § 1154(b) in light of the veteran's combat status, because "the May 1981 [RO] decision contains a reference to the veteran's Purple Heart award, and as such, it appears that the RO considered the veteran's combat service." R. at 5. The Board concluded that there was "no indication in the record that the law regarding service connection for hearing loss was incorrectly applied" and that "the veteran has not articulated a plausible argument based on a failure to apply the law or misapplication of the law to his case in light of the contemporaneous evidence"; based on these conclusions, the Board found no CUE in the May 1981 decision. R. at 5-6.

The Board also addressed other grounds for obtaining an EED. Reasoning that the May 1981 RO decision became final because the veteran failed to seek appellate review within one year after mailing of notice of that decision, the Board concluded:

> The finality of th[at] . . . decision precludes consideration of an effective date of the award of service connection for hearing loss prior to the date of that . . . decision. *See* 38 U.S.C.[] § 5110; 38 C.F.R. § 3.400(q)(1)(ii). The veteran eventually prevailed, as a November 1995 Board decision reopened the veteran's claim on the basis of new and material evidence and granted service connection for bilateral hearing loss. That decision was effectuated by a December 1995 rating decision which assigned an effective date of June 29, 1993. The veteran disagreed with the effective date, and a September 1998 [RO] decision assigned an [EED] of June 7, 1991, which is currently in effect. The veteran continued to express his disagreement with the effective date. As such, the central issue before the Board is the date the RO received the veteran's request to reopen his claim which eventually led to the grant of service connection.

R. at 7. The Board determined that June 7, 1991, was the date of receipt of the veteran's request to reopen and that "[p]rior to that date, the only correspondence of record pertains only to the veteran's

4

left-eye disorder, with no mention of hearing loss", so there was no basis for an EED by direct challenge of the claim to reopen. R. at 7.

The appellant argues principally as follows: (1) The Board's CUE analysis was "illegal" because the September 1998 RO decision, which found CUE in a prior RO decision and awarded the June 7, 1991, effective date here on appeal, was an "original, non-final adjudication on the issue of effective date" (Brief (Br.) at 3, 6-8 (citing 38 C.F.R. § 3.105(a) (2001))); (2) the Board "changed the issue" in the appellant's case to CUE (Br. at 8-10); (3) VA failed to fulfill its duty to suggest evidence necessary to develop the veteran's claim that the veteran may have overlooked and to tell him that CUE in the May 1981 decision was going to be an issue on appeal (Br. at 5, 10-11 (citing, inter alia, 38 C.F.R. § 3.103(c)(2) (2001))); and (4) the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (2000) (VCAA), required that the Board provide notice to the claimant that it was going to decide his claim based on CUE (Reply at 3-4). The Secretary responds as follows: (1) The February 2001 BVA decision finding no CUE in the May 1981 RO decision was not arbitrary and capricious because there was no medical evidence at that time of nexus between the appellant's condition and his service and because the 38 U.S.C. § 1154(b) presumption does not abrogate the medical-nexus requirement (Br. at 8, 10-11 (citing *Caluza v. Brown*, 7 Vet.App. 498, 507 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table))); (2) the appellant merely is disagreeing with the weighing of the evidence, which cannot be a ground for CUE (Br. at 11); (3) the May 1981 RO decision is final and, therefore, the effective date of the appellant's service-connected hearing loss cannot be earlier than the date of that rating (Br. at 12); and (4) the appellant asked for the Board to "set aside" the May 1981 RO decision and raised the issue of CUE himself (Br. at 17 (citing R. 246-49)).

## II. Analysis

### A. Claim Streams

There are two claim streams in the history of the appellant's VA claims for a hearing-loss disorder, *see* 38 C.F.R. §§ 4.85, 4.87a (1980); 38 C.F.R. § 4.85, Diagnostic Code (DC) 6100 (2000). After receiving notice on June 1, 1981, that his initial bilateral-hearing-loss service-connection claim had been denied the month before by the RO, the veteran did not file an NOD as to that claim within

5

one year; therefore, that decision became final on June 1, 1982. *See* 38 U.S.C. § 7105(b)(1) (requiring NOD to be filed within one year after notice). Furthermore, even if the veteran's NOD filed in June 1981 and the SOC issued by the Board that same month had pertained to the veteran's bilateral-hearing-loss claim, the May 1981 decision still would have become final on June 1, 1982, because the veteran failed to file a timely Substantive Appeal after the issuance of the SOC. *See* 38 U.S.C. § 7105(d)(3) (requiring that appeal be filed within 60 days after issuance of SOC or within the remainder of the one-year period from the date of notice of the RO decision, whichever period ends later); 38 C.F.R. § 20.302(b)(1) (2002).

The second bilateral-hearing-loss claim stream was opened on June 7, 1991, the date that the veteran filed with the RO what the RO determined in September 1998 was an informal claim to reopen. R. at 185, 196; *see* R. at 73, 63-64, 66-67, 69-70 (documents filed on June 7, 1991). Prior to that September 1998 determination and the award of an effective date based thereon, the RO in May 1994 had denied service connection (R. at 104-05, 107), the appellant in July 1994 had appealed to the Board (R. at 123-24), the Board in November 1995 had found new and material evidence to reopen the previously and finally disallowed claim and had awarded service connection (R. at 164-65, 167-68), and the RO in December 1995 had awarded a 30% bilateral-hearing-loss rating, effective June 29, 1993 (R. at 174-76). In its September 1998 decision assigning the June 1991 (instead of the June 1993) effective date, the RO did so based on its finding of CUE in the December 1995 decision as to the erroneous award of the June 1993 effective date. R. at 185-87. The Court notes that the RO's adjudication of the claim under a CUE analysis was in error because the December 1995 RO decision appears not to have been final. Specifically, (1) there is no notice to the veteran of that December 1995 RO decision in the ROA other than a letter dated January 10, 1996, that notified the veteran of the hearing-loss service-connection award and his amended disability award (R. at 178), and the December 18, 1996, NOD thus appears to have been timely; (2) in the decision here on appeal, the Board stated that the "veteran *disagreed* with the effective date" assigned in the December 1995 RO decision and that "a September 1998 [RO] decision assigned an [EED] of June 7, 1991" (R. at 7 (emphasis added)), thereby indicating that the Board considered the appellant's claim to be on direct appeal; and (3) the Board did not apply a CUE analysis to its review of the September 1998 RO decision (*see* R. at 6-8). Although the RO in September 1998 apparently

6

erroneously adjudicated the appellant's EED claim on a CUE basis, the decision was favorable to the appellant in that an EED was assigned. Because the appellant timely appealed that decision, this second claim stream is currently still open before the Court.

Therefore, the Court has before it the appellant's EED claim based on two different theories: (1) That the appellant is entitled to an EED for the 30% rating based on a direct challenge to the June 1999 RO decision, the most recent RO decision in the current claim stream; and (2) that the May 1981 RO decision contained CUE. Accordingly, there are *two separate analyses* in the Board decision on appeal: One for CUE in the May 1981 RO decision, which was a *final* decision, and one for the claim directly on appeal from the June 1999 RO decision, which was a *nonfinal* decision and is still on appeal and which subsumes the September 1998 RO decision. *See Mason (Sangernetta) v. Brown*, 8 Vet.App. 44, 51 (1995) (holding that, generally, effective date earlier than date assigned in previous RO decision may be awarded only if there was CUE in that decision or it never became final).

### B. Direct Challenge of the June 1999 RO Decision

Generally, the effective date of an award of compensation for a service-connected disability will be "the date of receipt of the claim or the date entitlement arose, whichever is later." 38 C.F.R. § 3.400. The determination of the effective date for a claim to reopen "shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(r); *see also Link v. West*, 12 Vet.App. 39, 46 (1998). Here, it is undisputed that the veteran submitted an informal claim to reopen on June 6, 1991, which is the current effective date of his 30% rating. R. at 185; *see* R. at 73, 63-64, 66-67, 69-70. Although the appellant is claiming that entitlement arose on March 11, 1945, the date of his in-service injury, as a result of his direct-appeal claim he is not eligible to receive a 30% rating prior to May 15, 1981, because that is the date of a final decision, and once a claim to reopen is received after "final disallowance", the earliest that an effective date may be assigned is the date of the claim to reopen. 38 C.F.R. § 3.400(q)(1)(ii) (2002). Accordingly, as a matter of law the only way that he could be entitled to an EED through a direct challenge to the June 1999 RO decision would be if he had filed a claim to reopen prior to his June 6, 1991, informal claim, *see* 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(r), but *after* May 15, 1981, the date of the prior final RO decision, *see* 38 C.F.R.

7

§ 3.400(q)(1)(ii). For example, the Court notes that the Board correctly concluded as to such a challenge that whether or not the RO should have considered the 1977 VA hospital report as a claim to reopen, the finality of the May 1981 RO decision prevents the assignment of an effective date as of that date. R. at 7; *see* 38 C.F.R. § 3.400(q)(1)(ii). However, section 5110(a) and § 3.400(r) do not preclude the award of an EED between May 15, 1981 and June 6, 1991, and the outcome of such a claim is dependent on the facts of this case – specifically, whether any document or action in that time period might be considered a claim to reopen. The assignment of an effective date is a question of fact reviewable by the Court under the "clearly erroneous" standard set forth in 38 U.S.C. § 7261(a)(4). *See Quarles v. Derwinski*, 3 Vet.App. 129, 135 (1992)

The VCAA amended, inter alia, 38 U.S.C. § 5103 ("Notice to claimants of required information and evidence") and added 38 U.S.C. § 5103A ("Duty to assist claimants"). VCAA § 3(a), 114 Stat. at 2096-98. The Court subsequently issued its opinion in the *Holliday* case, wherein the Court held "that all provisions of the VCAA are potentially applicable to claims pending on the date of the VCAA's enactment." *Holliday v. Principi*, 14 Vet.App. 280, 286, *mot. for recons. denied*, 14 Vet.App. 327 (per curiam order), *mot. for full Court review denied*, 15 Vet.App. 21 (2001) (en banc order). *But see Dyment v. Principi*, 287 F.3d 1377, 1385 (Fed. Cir. 2002) (seemingly overruling in part, sub silentio, *Holliday*, *supra*, as to application of holding set forth above to pre-VCAA BVA decisions). Pursuant to *Karnas v. Derwinski*, "where the law or regulation changes after a claim has been filed or reopened but before the administrative . . . appeal process has been concluded, the version mo[re] favorable to [the] appellant should . . . apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so." *Karnas*, 1 Vet.App. 308, 313 (1991). On August 29, 2001, the Secretary issued regulations that implemented new sections 5103 and 5103A in 38 C.F.R. § 3.159(b) and (c) (2002), respectively. 66 Fed. Reg. 45,620, 45,630-31 (Aug. 29, 2001). He made those regulations applicable to, inter alia, any claim for benefits, such as in the instant case, pending before the Department and "not decided by VA" as of November 9, 2000, the date of the VCAA's enactment. 66 Fed. Reg. at 45,629.

The Board is required to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a), (d)(1); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v.*

8

*Derwinski*, 2 Vet.App. 97, 100 (1992).  The Board is also required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court.  *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990).

As to the new notice requirements, in *Quartuccio v. Principi* this Court specifically held that new section 5103(a) and new § 3.159(b) require VA to inform the claimant (1) of the information and evidence not of record that is necessary to substantiate the claim, (2) of the information and evidence that VA will seek to provide, and (3) of the information and evidence that the claimant is expected to provide; the Court held implicitly that BVA failure to enforce compliance with that requirement is remandable error.  *Quartuccio*, 16 Vet.App. 183, 187 (2002).  This Court also has held that the Board's failure to address adequately in its decision the notice provisions in new section 5103(a) is a ground for remand under 38 U.S.C. § 7104(a) and (d)(1).  *Charles v. Principi*, 16 Vet.App. 370, 374 (2002).

In the February 2001 decision here on appeal, the Board erred by failing to mention or discuss the notice requirements in new section 5103(a) with respect to the veteran's direct-appeal EED claim (*see* R. at 181-82 (December 1996 NOD as to June 1993 effective date), 192 (October 1998 disagreement with June 1991 effective date)) and to determine whether those obligations were fulfilled.  *See* R. at 1-8; *Charles*, *supra*.  Accordingly, the Court will vacate the BVA decision as to that claim and remand the matter for readjudication; on remand, the Board must provide an adequate statement of reasons or bases for its decision, discussing ***all*** potentially applicable law and regulation, including the VCAA and VA regulatory notice provisions.  *See Charles*, *Weaver*, *Allday*, *Sanden*, *Schafrath*, and *Gilbert*, all *supra; cf. Quartuccio, supra*.

Moreover, it appears that VA did not comply with certain notice requirements contained in new section 5103(a), as later implemented by new regulation § 3.159(b).  Specifically, the ROA contains no documents in which VA purported to advise the appellant of the information and evidence necessary to substantiate his direct-appeal EED claim – such as evidence pertaining to an informal claim to reopen made between May 15, 1981, and June 6, 1991.  *See* R. at 1-270.

Furthermore, no document in the ROA specifically states, as new section 5103(a)-complying notice must, what information and evidence was necessary to substantiate that claim or addresses, under the VCAA amendments and new § 3.159(b), which information and evidence the Secretary would seek to obtain and which information and evidence the claimant would be expected to obtain. *See* R. at 1-270; *Quartuccio*, *supra*. Even if the Court were to address the issue whether the required section 5103(a) notice *could* be provided as late in the claims process as the issuance of an SOC or RO decision and to decide that it could be, the documents here did not provide the appellant with notice that reflected changes in the law brought about by the VCAA's enactment. *See* R. at 1-270.

Because the ROA contains no specific notice to the appellant that meets the standard established by new section 5103(a) and new § 3.159(b) as to his direct-appeal EED claim, the Court will remand that claim for readjudication on this basis as well. *See Quartuccio*, *supra* (vacating BVA decision and remanding where Secretary did not comply, and BVA did not enforce compliance, with notice requirements of new section 5103(a) and new § 3.159(b)). Although the Secretary asserts that the veteran "was amply represented and additional evidence had been submitted in support of his claim" and that "it would appear that [he] had not overlooked any advantageous evidence which would require further direction by the Hearing Officer" (Br. at 18), an express showing of prejudice is not required under *Quartuccio*, *supra*, and should not be. As this Court has stated in numerous dispositions in reliance on *Quartuccio*, the VCAA has imposed additional notice obligations on the Secretary, and it is not for the Secretary or this Court to predict what evidentiary development may or may not result from such notice. *Cf. Charles* and *Quartuccio*, both *supra*; *Sanchez-Benitez v. Principi*, 259 F.3d 1356, 1363 (Fed. Cir. 2001) (vacating Court decision that determined, on basis of record before Court, that remand and further development would not aid appellant in prevailing on issue not yet addressed by Board). Because the Court recognizes the possibility that, once given proper notice, the appellant may be able to provide VA with evidence pertinent to his EED claim, it would be pure speculation for the Court to conclude that the appellant will not obtain such evidence and that VA's errors were therefore nonprejudicial. *See* 38 U.S.C. § 7261(b)(2) (as amended by Veterans Benefits Act of 2002, Pub. L. No. 107-330, § 401(b), 116 Stat. 2820, 2832 (Dec. 6, 2002)). Based on this rationale, any argument that there is no evidence that supports the existence of a document dated before the June 6, 1991, claim to reopen but after

10

the May 15, 1981, prior final decision is similarly unavailing, because it would also be pure speculation for the Court to reach a conclusion as to what information and evidence might have been produced had the correct notice been given.

### C. CUE

An RO decision that has become final, as has the May 1981 RO decision at issue here, generally may not be reversed or amended in the absence of CUE. *See* 38 U.S.C. § 5109A (codifying into law VA regulation 38 C.F.R. § 3.105(a)); 38 C.F.R. § 3.105(a) (2002). A finding of CUE has the following effect on the prior final decision:

> Where evidence establishes [CUE], the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of [CUE] has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a). The CUE claim presented here is a collateral attack on a final RO decision. *See Crippen v. Brown*, 9 Vet.App. 412, 418 (1996); *see also Fugo v. Brown*, 6 Vet.App. 40, 44 (1993). In *Russell v. Principi*, the Court defined CUE:

> Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied. . . . [CUE is] the sort of error which, had it not been made, would have manifestly changed the outcome . . . [, an error that is] undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made.

*Russell*, 3 Vet.App. 310, 313-14 (1992) (en banc); *see also Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999) (expressly adopting the "manifestly changed the outcome" language in *Russell*, *supra*), *cert. denied*, 528 U.S. 967 (1999). In its recent en banc opinion in *Cook v. Principi*, the U.S. Court of Appeals for the Federal Circuit reiterated its holding in *Hayre v. West*, 188 F.3d 1327 (Fed. Cir. 1999), which *Cook* overruled on other grounds, that the Secretary's breach of the duty to assist in denying a claim does not constitute CUE. *Cook*, 318 F.3d 1334, 1336-47 (Fed. Cir. 2002) (rehearing en banc), *reh'g denied*, No. 00-7171, 2003 WL 459755 (Fed. Cir. Feb. 3, 2002), *petition for cert. filed*, No. 02-1317 (Feb. 28, 2003). "A determination that there was a '[CUE]' must be

11

based on the record and the law that existed at the time of the prior . . . decision." *Russell*, 3 Vet.App. at 314. "In order for there to be a valid claim of [CUE], . . . [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Id*. at 313; *see also Damrel v. Brown*, 6 Vet.App. 242 (1994). Moreover, a CUE claim must identify the alleged error(s) with "some degree of specificity." *Crippen*, 9 Vet.App. at 420; *Fugo*, 6 Vet.App. at 44 ("to raise CUE there must be some degree of specificity as to what the alleged error is and . . . persuasive reasons must be given as to why the result would have been *manifestly* different").

   *Russell* also established that, as a threshold matter, a CUE claim cannot be raised for the first time before this Court but instead must have been the subject of a final prior BVA adjudication. *Russell*, 3 Vet.App. at 314-15. When the Court considers the appeal of a BVA determination that there was no CUE in a prior final RO decision, the Court's review is limited to deciding whether the Board's conclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law", 38 U.S.C. § 7261(a)(3)(A), and whether it is supported by an adequate statement of "reasons or bases", 38 U.S.C. § 7104(d)(1). *See Beyrle v. Brown*, 9 Vet.App. 24 (1996); *Eddy v. Brown*, 9 Vet.App. 52, 57 (1996); *Damrel*, 6 Vet.App. at 246; *Russell*, 3 Vet.App. at 315.

   In the BVA decision here on appeal, the Board determined that there was no CUE in the May 1981 RO decision. Therefore, the issue is properly raised before this Court. *See Russell*, 3 Vet.App. at 314-315. The Board considered the veteran's argument that "the May 1981 [RO] decision contained CUE in that the RO had failed to consider the provisions of 38 U.S.C. § 1154(b), regarding combat veterans", and concluded:

> [T]he Board notes that the May 1981 [RO] decision contains a reference to the veteran's Purple Heart award, and as such, it appears that the RO considered the veteran's combat service. However, even accepting that the veteran was exposed to acoustic trauma during service, the evidence at the time of the May 1981 [RO] decision simply did not contain a medical opinion relating any current hearing loss to the veteran's military service.

R. at 5. Section 1154(b) provides in pertinent part:

> (b) In the case of any veteran who engaged in combat with the enemy in active service . . . during a period of war . . . , the Secretary shall accept as sufficient proof of service[]connection of any disease or injury alleged to have been incurred in or aggravated

12

by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service[] connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service[]connection in each case shall be recorded in full.

38 U.S.C. § 1154(b). In 1981, an identical provision appeared at 38 U.S.C. § 354(b) (1976).

As stated in part II.A., above, the Board is required to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation, as well as to include in its decision an adequate written statement of reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record. 38 U.S.C. § 7104(a), (d)(1); *Weaver*, *Sanden*, *Allday*, *Schafrath*, and *Gilbert*, all *supra*. In the instant case, the Board erred by failing to provide an adequate statement of reasons or bases for its conclusion that in its May 1981 decision the "RO considered the veteran's combat service" (R. at 5); specifically, the Board relied solely on the RO's *mention* of the veteran's Purple Heart award as evidence that it so "considered" (R. at 5), without evaluating whether or not the RO had adequately considered, as section 354(b) then mandated (and as section 1154(b) now mandates) that it must, whether there was "satisfactory lay or other evidence of service incurrence or aggravation . . . notwithstanding the fact that there is no official record of such incurrence or aggravation in such service", 38 U.S.C. § 354(b) (1976); 38 U.S.C. § 1154(b). *See* 38 U.S.C. § 7104(a), (d)(1); *cf.* R. at 167-68 (November 1995 BVA decision where Board applied section 1154 in light of veteran's combat service). Irrespective of that error, however, the Board correctly concluded that "the evidence at the time of the May 1981 [RO] decision simply did not contain a medical opinion relating any current hearing loss to the veteran's military service" (R. at 5); such a medical nexus opinion is required in order for service connection of the veteran's hearing loss to be established. *See* 38 U.S.C. § 354(b) (1976); 38 U.S.C. § 1154(b); *Clyburn v. West*, 12 Vet.App. 296, 303 (1999) (holding that "the provisions of section 1154(b) do not provide a substitute for medical-nexus evidence, but rather serve only to reduce the evidentiary burden for combat veterans with respect to the second *Caluza* requirement, [that is,] the submission of evidence

13

of incurrence or aggravation of an injury or disease in service", and citing *Wade v. West*, 11 Vet.App. 302, 305 (1998) (making same holding "pursuant to [section] 1154(b) and *Collette* [*v. Brown*, 82 F.3d 389 (Fed. Cir. 1996)]), and *Arms v. West*, 12 Vet.App. 188, 194 (1999)). Therefore, because the veteran could not possibly prevail on his hearing-loss claim in the absence of any such medical evidence, the evidence before the RO in May 1981 was "overwhelming[ly]" against his claim and the Board's reasons-or-bases error in not discussing section 354(b) is thus nonprejudicial error under 38 U.S.C. § 7261(b)(2). *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991); *see Clyburn*, *supra* (holding that failure to discuss section 1154(b) was nonprejudicial error because of lack of medical evidence connecting in-service incurrence of combat veteran's knee condition to current knee disability).

The Court notes that, contrary to the appellant's contentions, the Board did not "change[] the issues on [his] appeal" (Br. at 8), because the appellant himself raised the issue of CUE in an October 1998 statement-in-support-of-claim form in which he requested an EED: "I ask that . . . ***VA consider the previous final decision a product of clear and unmistakable error***" (R. at 192 (emphasis added)). However, the Board should not have proceeded to adjudicate the CUE claim in the first instance without offering to remand the question to the RO. *See Sutton v. Brown*, 9 Vet.App. 553, 564-70 (1996); *Marsh v. West*, 11 Vet.App. 468, 471 (1998) ("At the very least, the Board was obligated to ask the veteran whether he objected to the Board's adjudication of the NOD jurisdictional issue in the first instance and to include in the statement of reasons or bases for its decision an explanation as to why such adjudication in the first instance was not prejudicial to him."). That error, unlike the reasons-or-bases defect in the Board decision, cannot be considered nonprejudicial under 38 U.S.C. § 7261(b)(2), because we cannot decide that the veteran could not possibly have prevailed on the claim had the matter been sent back to the RO for initial CUE adjudication. Specifically, because one of the documents on which the Board principally relied in reopening and awarding the appellant's claim for service connection for bilateral hearing loss in November 1995 was the February 1977 VA medical record referring to the veteran's "grenade wound to the head" during World War II and "subsequent hearing loss, most severe in the right ear" that was "confirmed during [that] hospitalization" (R. at 63; *see* R. at 166-67), it is possible that initial adjudication of the veteran's claim by the RO could have precipitated further claim-development

14

action that would have discovered that evidence and resulted in a favorable determination of his claim. It would be pure speculation to conclude otherwise. *Cf.* 38 U.S.C. § 7261 (b)(2). Thus, the Court will vacate the Board decision on this ground as well.

As for the appellant's contentions regarding the application of the VCAA notice provisions to his CUE claim (Reply at 3-4), the Court has held that these provisions do not apply to CUE claims. *Parker v. Principi*, 15 Vet.App. 407, 412 (2002); *Livesay v. Principi*, 15 Vet.App. 165, 179 (2001) (en banc); *see also Juarez v. Principi*, 15 Vet.App. 518, 520-21 (2002).

### III. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the parties' pleadings, the Court will vacate the February 2001 Board decision and remand the matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 5100, 5103, 5103A, 5106, 5107, 5109A, 7104(a), (d)(1); 38 C.F.R. §§ 3.105, 3.159(b), (c), 3.400(q)(1)(ii), (r); 38 C.F.R. §§ 4.85, 4.87a (1980); *Charles* and *Quartuccio*, both *supra*; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court) [hereinafter VBIA § 302]; *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (2001) (holding that VBIA § 302 applies to all elements of a claim remanded by Court or Board), and with all applicable law and regulation. *See Allday*, 7 Vet.App. at 533-34. On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order) (concluding that an appellant is entitled, until 90 days after Board mails postremand notice to appellant, to submit additional evidence and argument or to request hearing on appeal, at which appellant may submit new evidence), and the Board is required to consider any such evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). A remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271

(1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh*, 11 Vet.App. at 472.

VACATED AND REMANDED.