# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-944

LARRY A. PELEGRINI, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 23, 2003                 Decided    January 13, 2004  )

*Kenneth M. Carpenter*, of Topeka, Kansas, with whom *Sean Kendall*, of Boulder, Colorado, was on the brief, for the appellant.

*John D. McNamee*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Brian B. Rippel*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief, for the appellee.

*Robert V. Chisholm*, of Providence, Rhode Island, was on the brief for the National Organization of Veterans' Advocates, Inc., as amicus curiae.

Before KRAMER, *Chief Judge*, and IVERS and STEINBERG, *Judges*.

STEINBERG, *Judge*, filed the opinion of the Court and separate views. IVERS, *Judge*, filed an opinion concurring in part and dissenting in part.

STEINBERG, *Judge*: The appellant, through counsel, seeks review of an April 30, 2001, Board of Veterans' Appeals (Board or BVA) decision that found that an April 1994 Department of Veterans Affairs (VA) regional office (RO) decision was final and that no new and material evidence had been presented, after that VARO decision, to reopen his previously disallowed claim for VA "service connection for a soft[-]tissue lung mass due to exposure to Agent Orange or other herbicides" during his service in Vietnam. Record (R.) at 4. The appellant filed a brief and a reply brief, in which he makes certain arguments in support of a remand based on the Veterans Claims

Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096. The Secretary filed a brief, in which he argues that the VCAA does not require a remand in the instant appeal. Thereafter, the Court ordered additional briefing from the parties; both parties and amicus curiae, the National Organization of Veterans' Advocates, Inc., filed responses. The Court then heard oral argument in the case. For the reasons set forth below, the Court will vacate the Board decision and remand the matter for readjudication consistent with this opinion.

## I. Relevant Background

The veteran served honorably on active duty in the U.S. Marine Corps from November 1968 until April 1970, including service in Vietnam. R. at 231. His service medical records and a VA medical examination conducted shortly after his discharge each indicated that his chest was normal. R. at 26, 37-45. In March 1990, he underwent a VA Agent Orange examination, which produced a "[n]ormal" chest x-ray. R. at 77. Subsequently, the veteran received a series of VA chest x-rays and follow-up examinations, the results of which were recorded in the following VA radiology reports: (1) An October 1992 report that indicated that the veteran had a "[p]robably normal chest" but that there was a "questionable area" on his lung (R. at 84); (2) November 1992 reports, one of which indicated "[n]ormal chest" (R. at 85) and one made two weeks later that revealed a 1.5-cm lesion on the veteran's left lung (R. at 86); (3) January 1993 reports, one of which indicated "[n]o definite evidence of a lesion as suspected in November[] 1992" (R. at 87), one that indicated "soft[-]tissue fullness" in the left lung and that recommended another x-ray (R. at 98), and one, regarding that further x-ray, that indicated that a soft-tissue mass, measuring 2.5 by 3.5 cm, was present and was "most consistent with a primary lung [tumor]" (R. at 99); and (4) a June 1993 report that indicated "a suggestion of [two] less[-]than[-]1[-]cm lymph nodes" but stated that it was difficult to confirm that "suggestion" without a contrast examination, to which the veteran would not consent (R. at 97).

In October 1993, the veteran filed, inter alia, a claim to "reopen [his] [A]gent Orange claim." R. at 103. He also filed at the same time a claim to reopen a previously and finally disallowed claim for post-traumatic stress disorder, which the Board later remanded to the RO and which is not part of the current appeal (R. at 15-21). In November 1993, the veteran underwent an additional VA

medical examination, including x-rays, after which the examining physician concluded that, although he agreed with the January 1993 report (R. at 98-99), "[i]n the interval the described mass has resolved."  R. at 111.  The following month, the RO denied the veteran's claim for "[s]ervice[]connection for Agent Orange exposure" on the grounds that the veteran failed to claim "any specific disability relating to exposure" and that "mere exposure is not a disability in itself." R. at 106.  After the veteran filed a Notice of Disagreement as to that decision (R. at 109), the RO, in April 1994, again denied service connection for a left-lung-soft-tissue mass (R. at 124).  The veteran did not appeal that decision, and it became final.

An August 1995 VA radiology report included a conclusion that there were "[n]o lung masses noted".  R. at 153.  Also that month, a VA medical examiner recorded that the veteran previously "was told he ha[d] cancer [and] he treated himself with herbs, nuts, fever therapy[, and] bowel cleansing", after which the mass resolved; the examiner stated his impressions as follows:  "Most likely the p[atien]t had an inflammatory lesion in 1/93 [that] has now resolved.  Most recent [x-rays] do not show any evidence of lung lesion."  R. at 160-61.  In March 1996, the veteran filed, inter alia, a claim to reopen.  R. at 127-28.  Records of a VA medical examination from that same month noted (1) that the veteran had a history of a left-lung mass that "resolved by itself" (R. at 150), (2) that an x-ray indicated that his chest was "normal" and that his lungs were "clear" (R. at 152), and (3) that he had told an examining physician that "Agent Orange exposure caused [cancer in his left lung in January 1993]" and that, because his throat had been sore for three and a half weeks, he was "concerned that [that] mass may be returning" (R. at 156-57).  In January 1997, the RO denied the veteran's claim for "service connection for condition claimed as soft[-]tissue lung mass due to Agent Orange exposure" because the RO found that a "disabling lung mass [was] not shown to exist" then, nor was there "evidence that the veteran [then] had, or has ever had, a respiratory cancer or any other condition presumed to be related to Agent Orange".  R. at 175-76.

At a December 2000 hearing before the Board, the veteran testified under oath to the following:  (1) He had been diagnosed in January 1993 with a lung mass, his doctor had wanted him to have chemotherapy, the veteran had refused that treatment (as well as a biopsy) because he was a vegetarian hygienist, and, after a CAT scan, the doctor had told him that there was a 95% chance that the mass was lung cancer (R. at 468-69); (2) by June 1993, the mass had shrunk, and the mass

3

had resolved by December 1993 (R. at 468-70); and (3) the veteran was worried because, even though the mass had resolved, he had "something in [his] ear that seems to be a tumor" and he feared it might be cancer that had metastasized from his now-resolved lung cancer (R. at 474-77).

In the BVA decision here on appeal, the Board denied reopening the appellant's claim and explained that, although the RO in the decision on appeal "implicitly reopened the claim and adjudicated the matter on the merits" (R. at 11), the Board, pursuant to *Barnett v. Brown*, 8 Vet.App. 1 (1995), *aff'd*, 83 F.3d 1380 (Fed. Cir. 1996), "must conduct an independent review" of the reopening issue (R. at 10). The Board noted the duty-to-notify and duty-to-assist provisions of the VCAA (as codified at 38 U.S.C. § 5103(a) and 38 U.S.C. § 5103A, respectively), quoted the "Rule With Respect to Disallowed Claims", 38 U.S.C. § 5103A(f), and concluded that the VCAA "has not modified the longstanding requirement" that new and material evidence be submitted to reopen a claim. R. at 10. The Board determined, inter alia, that the April 1994 RO decision was final and that none of the VA medical records and examination reports were "material", and thus denied reopening of the appellant's claim. R. at 4.

## II. Contentions on Appeal

In his principal brief, the appellant argues, inter alia, that the Board erred by (1) adjudicating his claim as a claim to reopen without notifying him beforehand of its intention to do so and allowing him the opportunity to present evidence and argument on that issue (Brief (Br.) at 6-7 (citing *Barnett*, 8 Vet.App. at 4, and *Sutton v. Brown*, 9 Vet.App. 553, 564-70 (1996), for proposition that Board may adjudicate reopening issue in first instance "if and only if the veteran is not prejudiced")) and (2) failing to give notice to him under 38 U.S.C. § 5103(a) of what medical or lay evidence was necessary to substantiate his claim (Br. at 10-12).

The Secretary argues in his principal brief that the VCAA "does not impact" this appeal. Br. at 11. Specifically, the Secretary contends that the VA regulations implementing the VCAA are inapplicable to the appellant's claim to reopen because that claim was submitted before August 29, 2001, pursuant to 66 Fed. Reg. 45,620, 45,629 (Aug. 29, 2001) (codified at 38 C.F.R. pt. 3), and, thus, that VA had no duty to assist because the appellant had not submitted new and material evidence to reopen his claim. Br. at 13. As to the notice provisions of the VCAA, the Secretary

4

asserts that, "although [those provisions were] not specifically addressed by the Board, . . . the case was fully developed and there is no indication that any additional evidence exits which has not already been included in the record." *Ibid*.

In August 2002, the Court ordered the parties to present further briefing regarding, inter alia, "the effect, if any, of *Quartuccio*[ *v. Principi*, 16 Vet.App. 183, 187 (2002)], on the appellant's claim." *Pelegrini v. Principi*, 16 Vet.App. 259, 260-61 (2002) (per curiam order). The appellant filed a response arguing, inter alia, that *Quartuccio* requires that the case be remanded for compliance by the Secretary with the mandatory notice requirements in section 5103(a) and (b). Supplemental (Suppl.) Br. at 14. The Secretary then moved for a stay of proceedings pending disposition in the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) of a direct challenge to the Secretary's regulations implementing the VCAA. Motion at 3 (citing *Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs  (PVA v. Sec'y)*, No. 02-7007 (Fed. Cir.) (consolidated case, argued December 2002, and subsequently decided, 345 F.3d 1334 (Fed. Cir. 2003))). The Court denied that motion and ordered the Secretary to file his response. *Pelegrini v. Principi*, No. 01-944, 2002 WL 31470066, at *1 (Vet. App. Oct. 31, 2002) (per curiam order). In that response, the Secretary cites the requirements of *Quartuccio*, *supra*, and *Charles v. Principi*, 16 Vet.App. 370 (2002), and asserts, inter alia, that, although the Board did not address the VCAA notice requirements, "VA adequately notified [the a]ppellant during an extensive and thorough Board hearing held on December 4, 2000 (R.[ at ]466-506), of the information and evidence necessary to substantiate his claim <u>and</u> which portion of such information or evidence was to be provided by [the a]ppellant and which portion was to be provided by VA." Suppl. Br. at 11-13 (citing R. at 467, 475, 476-78, 481-82, 486-92, and 498-502 from the BVA hearing). In the appellant's reply to the Secretary's supplemental brief, the appellant counters the Secretary's *Quartuccio* arguments by stating that the appellant is entitled to "the mandatory 'preadjudicatory' notices under [section] 5103 (a) and (b)." Suppl. Reply at 11-13.

### III. Analysis

After submitting briefing on the applicability of and VA's compliance with the VCAA, at oral argument counsel for both parties indicated, in response to a question from the Court, that the Board should have adjudicated the appellant's claim as an original, rather than as a reopened, claim.

5

However, the resolution of that question does not affect the determination of whether VA complied with the VCAA notice provisions, because section 5103(a) applies equally to original claims and claims to reopen. *See Quartuccio*, 16 Vet.App. at 186-87. Hence, we turn first to the question of VA's compliance with its duty to notify.

### A. VCAA Duty to Notify

### 1. Applicability of VCAA § 3(a)

As discussed in greater detail in part III.A.2., below, section 3 of the VCAA amended, inter alia, 38 U.S.C. § 5103 ("Notice to claimants of required information and evidence") and added 38 U.S.C. § 5103A ("Duty to assist claimants"). VCAA § 3(a), 114 Stat. at 2096-98. In *Dyment v. Principi* and *Bernklau v. Principi*, the Federal Circuit concluded that section 3(a) of the VCAA "was not intended to be given retroactive effect", *Dyment*, 287 F.3d 1377, 1385 (Fed. Cir. 2002), and thus did "not apply retroactively to require that proceedings that were complete before [VA] and were on appeal to the Court of Appeals for Veterans Claims or [the Federal Circuit] be remanded for readjudication under the new statute", *Bernklau*, 291 F.3d 795, 805-06 (Fed. Cir. 2002). The Federal Circuit expressly declined to decide, however, "whether applying section 3(a) to proceedings already commenced at the time of enactment of the VCAA and still pending before the agency's [RO] or the [BVA] would constitute retroactive application of the statute" and reached a conclusion on the VCAA's inapplicability only as to proceedings that were "***complete before the agency***, but [were] on appeal at the time the VCAA was enacted." *Bernklau*, 291 F.3d at 806 (emphasis added). This Court, in *Stephens v. Principi*, applied the *Dyment* and *Bernklau* holdings to cases pending in this Court on or before the date of the VCAA's enactment. *Stephens*, 16 Vet.App. 191, 193 (2002) (per curiam order); *see also Shoffner v. Principi*, 16 Vet.App. 208, 215 (2002). Recently, in *Kuzma v. Principi*, the Federal Circuit reaffirmed the *Dyment* and *Bernklau* holdings as to retroactivity but, again, did not purport to deal with the applicability of the VCAA to cases pending anywhere other than before the Federal Circuit or this Court at the time of the VCAA's enactment. *Kuzma*, 341 F.3d 1327, 1328-29 (Fed. Cir. 2003).

This Court has consistently applied the VCAA to cases pending before VA at the time of the VCAA's enactment. *E.g.*, *Huston v. Principi*, 17 Vet.App. 195, 202-03 (2003) (applying 38 U.S.C. § 5103(a)); *Charles*, 16 Vet.App. at 373-35 (applying 38 U.S.C. § 5103A); *Quartuccio*, *supra*

(applying section 5103(a)); *see also Juarez v. Principi*, 16 Vet.App. 518, 521 (2002) (per curiam order) (remanding for readjudication in light of VCAA claim denied in September 2000 BVA decision because, "as of the November 9, 2000, enactment of the VCAA, the 120-day judicial-appeal period[, pursuant to 38 U.S.C. § 7266(a),] had not yet expired and the appellant had not filed a[ Notice of Appeal (NOA)], [and, therefore,] the claims denied by the September 2000 BVA decision were still pending before VA"). Although the Court has resolved the question left open by the three Federal Circuit opinions, we have done so without analysis as to the law regarding retroactive application. In order to remove any doubt regarding the continued applicability of the VCAA to cases pending before VA at the time of the VCAA's enactment, we will briefly examine that matter in light of the jurisprudence on retroactivity. The application of VCAA § 3(a) to a claim pending before an RO or the BVA on the date of the VCAA's enactment does not constitute the prohibited "retroactive application" described in *Dyment* and *Bernklau*, because 38 U.S.C. § 7104(a) provides, as it did on November 9, 2000, that BVA decisions "shall be based . . . upon consideration of all . . . applicable provisions of law and regulation", 38 U.S.C. § 7104(a). *See Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992); *Schafrath v. Derwinski*, 1 Vet.App. 589, 592-93 (1991); *see also Charles*, 16 Vet.App. at 373. With regard to such claims not complete before VA on November 9, 2000, VCAA § 3 became "applicable law" on its enactment date (1) because "[i]t is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment", *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991); *see DeSousa v. Gober*, 10 Vet.App. 461, 466 (1997), and (2) because the VCAA was not made effective only as to claims ***filed*** after its enactment, *cf., e.g.*, Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 9014, 112 Stat. 685, 865-66 (enacting 38 U.S.C. § 1103, which restricts VA benefits based on effect of use of tobacco and which was made applicable "to claims received by the Secretary . . . after the date of the enactment of this Act").

Moreover, the application of VCAA § 3 to claims pending before VA (at an agency of original jurisdiction (AOJ) or the BVA) on the date of the VCAA's enactment in no way resembles the kind of disfavored "retroactivity" about which the Supreme Court was concerned in *Landgraf v. USI Film Products*, which was quoted in *Bernklau*, 291 F.3d at 805-06; *Landgraf*'s holding

regarding impermissible retroactive application was limited to statutes that would burden private rights, increase a private party's liability, or impose new monetary obligations on a party. *Landgraf*, 511 U.S. 244, 286, 277, 280 (1994) (holding that statute in question did not apply to cases arising before its enactment because there is "well-settled presumption against application of the class of new statutes that would have genuinely 'retroactive' effect", and defining "retroactive effect" as "***impair[ing] rights*** a party possessed when he acted, ***increas[ing] a party's liability*** for past conduct, or ***impos[ing] new duties*** with respect to transactions already completed", rather than granting ***new rights*** to ***private party*** (emphasis added)); *see also Disabled Am. Veterans  v. Sec'y of Veterans Affairs (DAV v. Sec'y)*, 327 F.3d 1339, 1344 (Fed. Cir. 2003) (quoting *Landgraf*, *supra*); *Bernklau*, 291 F.3d at 804 (quoting *Landgraf*, 511 U.S. at 270, as follows:  "'Since the early days of this Court, we have declined to give retroactive effect to ***statutes burdening private rights*** unless Congress had made clear its intent.'" (emphasis added)); 146 Cong. Rec. H9912, H9916 (daily ed. Oct. 17, 2000) (Committees on Veterans' Affairs' Explanatory Statement describing VCAA § 7 as "provid[ing] that, ***in general***, ***the provisions in the bill*** would apply to claims filed on or after the date of enactment and to claims which are not final as of that date" (emphasis added)); 67 Fed. Reg. 3,099, 3,104 (Jan. 23, 2002) (recognizing, in VA Supplementary Information, that "[t]he fact that a regulation applies to pending matters does not make it retroactive", and citing *Landgraf*, *supra*, in support of this proposition); BLACK'S LAW DICTIONARY 1318 (7th ed. 1999) (stating that one of the concepts of retroactivity "consists in the application of a new rule of law to an act or transaction ***which was completed*** before the rule was promulgated" (emphasis added)); *see generally* VA Gen. Coun. Prec. 11-00 para. 6.

Accordingly, because VA administrative proceedings were ***ongoing*** in this case on November 9, 2000, just as they were in *Huston*,  *Quartuccio*, and *Charles*, all *supra*, and, as in *Juarez*, *supra*, were not yet complete the VCAA then became "applicable" law as to the veteran's claim pending before the Board, and the Board was ***required*** to consider the VCAA pursuant to section 7104(a).  38 U.S.C. § 7104(a).  As the VA General Counsel has stated regarding the effective dates of various VCAA provisions, "[a] conclusion that the title 38 provisions as created or amended by the Act other than section 5107 do not apply to claims pending on the date of enactment would lead to an absurd result."  VA Gen. Coun. Prec. 11-00 para. 5 (stating that under such an

8

interpretation, "[a] well-grounded claim would not be required for those pending claims, because section 5107 as amended does not require a well-grounded claim, but VA would have no duty to assist claimants whose claims are pending, because section 5107 as amended imposes no such duty, and section 5103A, which does, would not apply to those pending claims. Congress could not have intended such an anomolous result."). We agree and hold expressly today that the revised notice provisions enacted by VCAA § 3 apply to cases – such as the instant case – pending before VA at the time of the VCAA's enactment. We thus will proceed to review this appeal in light of the VCAA and also with reference to VA's implementing regulations, which by their terms will be applicable on remand. *See Huston*, 17 Vet.App. at 201-03, 206; *Fortuck v. Principi*, 17 Vet.App. 173, 181 (2003); 66 Fed. Reg. at 45,620 (stating that August 2001 notice regulations implementing VCAA are applicable generally "to any claim filed before [November 9, 2000, the VCAA's enactment date,] but not decided by VA as of that date").

### 2. New Notice Requirements

Section 5103(a) provides:

> (a) REQUIRED INFORMATION AND EVIDENCE.–Upon receipt of a complete or substantially complete application, the Secretary shall notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.

38 U.S.C. § 5103(a). Regulation § 3.159(b) provides in pertinent part:

> (b) *VA's duty to notify claimants of necessary information or evidence.*
>
> (1) When VA receives a complete or substantially complete application for benefits, it will notify the claimant of any information and medical or lay evidence that is necessary to substantiate the claim. VA will inform the claimant which information and evidence, if any, that the claimant is to provide to VA and which information and evidence, if any, that VA will attempt to obtain on behalf of the

9

claimant.  VA will also request that the claimant provide any evidence in the claimant's possession that pertains to the claim.

38 C.F.R. § 3.159(b)(1) (2003).  On January 23, 2002, the Secretary amended 38 C.F.R. § 19.9 to provide:

> (a) *General*. If further evidence, clarification of the evidence, correction of a procedural defect, or any other action is essential for a proper appellate decision, a Board Member or panel of Members may:
>
> > (1) Remand the case to the [AOJ], specifying the action to be undertaken; or
> >
> > (2) Direct Board personnel to undertake the action essential for a proper appellate decision.
> >
> > > (I) Any such action shall comply with the provisions of § 3.159(a) and (c)-(f) of this chapter (relating to VA's assistance to claimants in developing claims).
> > >
> > > (ii) If the Board undertakes to provide the notice required by 38 U.S.C. [§] 5103(a) and/or § 3.159(b)(1) of this chapter, the appellant shall have not less than 30 days to respond to the notice.  If, following the notice, the Board denies a benefit sought in the pending appeal and the appellant submits relevant evidence after the Board's decision but before the expiration of one year following the notice, that evidence shall be referred to the [AOJ]. . . .

38 C.F.R. § 19.9(a) (2003).  This amendment was, inter alia, a departure from the prior rule that "the Board *shall remand the case to the [AOJ]*" where "further evidence, clarification of the evidence, correction of a procedural defect, or any other action is essential for a proper appellate decision." 38 C.F.R. § 19.9(a) (2001) (emphasis added).

In May 2003, the Federal Circuit in *DAV v. Sec'y*, *supra*, held in a ruling on a petition challenging, inter alia, the newly amended § 19.9:

> We hold that 38 C.F.R. § 19.9(a)(2) is invalid because, in conjunction with the amended rule codified at 38 C.F.R. § 20.1304, it allows the Board to consider additional evidence without having to remand the case to the AOJ for initial consideration and without having to obtain the appellant's waiver.  That is contrary to the

requirement of 38 U.S.C. § 7104(a) that "[a]ll questions in a matter which . . . is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary." Moreover, we hold that 38 C.F.R. § 19.9(a)(2)(ii), which requires the Board "to provide the notice required by 38 U.S.C. [§ ]5103(a)" and "not less than 30 days to respond to the notice," is invalid because it is contrary to 38 U.S.C. § 5103(b), which provides the claimant one year to submit evidence.

*DAV v. Sec'y*, 327 F.3d at 1341-42; *cf. PVA v. Sec'y*, *supra* (invalidating similar 30-day regulatory requirement in § 3.159(b)(1)). *But see* Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 701(b), 117 Stat. 2651, 2670 (Dec. 16, 2003) (seemingly validating 30-day provisions in § 19.9(a)(2)(ii) and § 3.159(b) that were invalidated in, respectively, *DAV v. Sec'y* and *PVA v. Sec'y*, both *supra*).

In response to *DAV v. Sec'y*, *supra*, the Secretary, in a notice of proposed rulemaking (NPRM), has proposed to amend again § 19.9. If so amended, § 19.9(a) would provide:

> (a) *General*. If further evidence, clarification of the evidence, correction of a procedural defect, or any other action is essential for a proper appellate decision, a Veterans Law Judge or panel of Veterans Law Judges shall remand the case to the [AOJ], specifying the action to be undertaken.

Board of Veterans' Appeals: Obtaining Evidence and Curing Procedural Defects, 68 Fed. Reg. 69,062, 69,065 (proposed Dec. 11, 2003) (also proposing to redefine in 38 C.F.R. § 20.3 AOJ to include, inter alia, entire Veterans Benefits Administration).

    *a.* *Timing of Notice Requirement.* Section 5103(a) requires the Secretary to give VCAA-complying notice to a VA claimant "***[u]pon receipt*** of a complete or substantially complete application." 38 U.S.C. § 5103(a) (emphasis added). "Upon" means "on the occasion of, at the time of, or immediately thereafter". WEBSTER'S COLLEGE DICTIONARY 1465 (Random House 1992). In 38 U.S.C. § 5100, "claimant" is defined as "any individual applying for, or submitting a claim for, any benefit under the laws administered by the Secretary." 38 U.S.C. § 5100. Therefore, the plain language of the statute requires that notice to a VA claimant pursuant to the VCAA be provided "at the time" that, or "immediately after", the Secretary receives a complete or substantially complete application for VA-administered benefits. 38 U.S.C. §§ 5100, 5103(a); *see Brown v. Gardner*,

11

513 U.S. 115, 120 (1994) (holding that "the text and reasonable inferences from it give a clear answer against the Government, and that, as we have said, is 'the end of the matter'" (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993), and *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984))); *Chevron*, *supra* (holding that when "Congress has directly spoken to the precise question at issue" and "the intent of Congress is clear, that is the end of the matter"). The Court need not pinpoint the exact moment when VA must provide section 5103 notice in order to comply with the statute, but the words "[u]pon receipt" mandate that notice given to a service-connection claimant after an initial unfavorable AOJ decision on the claim would not comply. In other words, the least that can be said about the section 5103(a) timing requirement is that it requires that the provision of notice precede an initial unfavorable AOJ decision on a service-connection claim – the next major adjudication-process milestone after the application is filed. 38 U.S.C. § 5103(a); 38 C.F.R. § 3.159(b)(1); *cf.* 66 Fed. Reg. at 45,622 (Secretary's Supplementary Information specifically rejecting, in reaction to regulatory comment where commenter had asserted that section 5103(a) requires Secretary to give to a claimant additional notice upon each submission of additional evidence before initial AOJ decision, any concept of multiple notices).

Moreover, nothing in the VCAA or otherwise in title 38 of the U.S. Code, in the VCAA's legislative history, or in VA's August 2001 regulations or their regulatory history, suggests a contrary reading of section 5103(a). Indeed, the "at the time of" definition that connotes "when" is affirmed by the Secretary's regulation in § 3.159(b)(1), which provides that "[*w*]*hen VA receives* a complete or substantially complete application for benefits", it will give the requisite notice. 38 C.F.R. § 3.159(b)(1) (emphasis added). In the Supplementary Information accompanying the August 2001 promulgation of § 3.159(b)(1), the Secretary elaborated as follows on the timing requirement: "The statutory notice required by the VCAA occurs at an early point in the claims process when the claimant often has not yet identified the evidence and information relevant to the claim." 66 Fed. Reg. at 45,622. The Supplementary Information also explained:

> Another commenter stated that the regulation should specifically state that the notice required under section 5103(a) will be sent to the claimant *before a decision on the claim has been made. We agree* and have changed the language of § 3.159(b)(1) to state that VA will send the required statutory notice "When VA receives a complete or

12

substantially complete application for benefits," rather than "If VA receives" this application.

66 Fed. Reg. at 45,622-23 (emphasis added).

The express statutory purpose of section 5103(a), which is to inform claimants "of any information, and any medical or lay evidence, . . . that is necessary to substantiate the claim", further buttresses our reading of the plain language of both section 5103(a) and § 3.159(b)(1). 38 U.S.C. § 5103(a). Providing such notice *after* a claimant has already received an initial unfavorable AOJ determination on a service-connection claim, i.e., a denial of the claim, would largely nullify the purpose of the notice and prejudice the claimant by forcing him or her to overcome an adverse determination. *Cf. PVA v. Sec'y*, *supra* (holding that premature denial of claim, under § 3.159(b)(1) 30-day rule, with promise to reopen does not satisfy statutory section 5103(a) one-year requirement). Noncompliance with the timing requirement of section 5103(a) also substantially impairs the orderly sequence of claims development and adjudication under the statutory scheme, *see* 38 U.S.C. §§ 5102, 5103A, 5104, 5107, 7105, thereby depriving a claimant of the gamut of VCAA rights during his or her first bite at the adjudicatory apple.

For all of the foregoing reasons, the Court holds that under section 5103(a), before an initial unfavorable AOJ decision on the claim, a service-connection claimant must be given notice of the three matters specified in the statute and one additional matter specified in the regulation, *see* part III.A.2.b, *infra*. The Secretary has failed to demonstrate that, in this case, lack of such a pre-AOJ-decision notice was not prejudicial to the appellant, *see* 38 U.S.C. § 7261(b)(2) (as amended by the Veterans Benefits Act of 2002, Pub. L. No. 107-330, § 401, 116 Stat. 2820, 2832) (providing that "[i]n making the determinations under [section 7261(a)], the Court shall . . . take due account of the rule of prejudicial error"). Accordingly, and having taken "due account of the rule of prejudicial error", 38 U.S.C. § 7261(b)(2), the Court will vacate the Board decision and remand the matter for compliance with the mandatory statutory and regulatory notice requirements. *See* 38 U.S.C. § 7261(a)(3)(A), (C), (D) (directing Court to set aside BVA decisions found to be not in accordance with law, in violation of statutory right, or without observance of procedure required by law); *see also* 38 U.S.C. § 5103(a); 38 C.F.R. § 3.159(b)(1). Although our opinion today does not address whether and, if so, how, the Secretary properly can cure defects in the timing of the provision

of notice, we note the following: The Secretary, as noted previously, amended 38 C.F.R. § 19.9 to permit the Board in the first instance, inter alia, to provide notice and to develop evidence; the Federal Circuit, in *DAV v. Sec'y*, *supra*, struck at least part of that regulation; and the Secretary, in an NPRM, has proposed to amend that regulation again.

*b. Content of Notice Requirement.* On remand the Secretary must provide notice, consistent with the requirements of section 5103(a), § 3.159(b), and *Quartuccio*, *supra*, that informs the claimant (1) of the information and evidence not of record that is necessary to substantiate the claim, (2) of the information and evidence that VA will seek to provide, and (3) of the information and evidence that the claimant is expected to provide. Furthermore, in compliance with the explicit requirement of § 3.159(b) and the implicit requirement of section 5103(a), on remand VA must "also request that the claimant provide *any evidence* in the claimant's possession that pertains to the claim." 38 C.F.R. § 3.159(b)(1) (emphasis added). In other words, as a fourth element of the requisite notice, the Secretary must tell the claimant as to the matter at issue to "give us everything you've got pertaining to your claim(s)", or something to that effect. *See* 38 C.F.R. § 3.159(b)(1).

### B. Board Adjudication of Claim as Claim to Reopen

The Agent Orange Act of 1991("the Act") provided for a presumption of service connection to be applied to veterans who had served in the "Republic of Vietnam during the Vietnam era" and were diagnosed as having diseases that were "associated with exposure to certain herbicide agents." Pub. L. No. 102-4, § 2(a)(1), 105 Stat. 11, 11 (codified at 38 U.S.C. § 316, renumbered at 38 U.S.C. § 1116 by Pub. L. No. 102-83, § 5(a), 105 Stat. 378, 406 (1991)); *see* 38 C.F.R. § 3.309(e) (1993) (initial implementing regulation for section 1116). In addition to the diseases listed in what became section 1116, the Act authorized the Secretary to issue regulations extending the service-connection presumption to other diseases so warranting. 38 U.S.C. § 1116(a)(1)(B). Pursuant to that authority, the Secretary in June 1994 expanded the list of diseases subject to the presumption to include "[r]espiratory cancers (cancer of the lung, bronchus, larynx, or trachea)". 59 Fed. Reg. 29,723, 29,724 (June 9, 1994) (amending § 3.309(e)). That regulation now provides in pertinent part:

> (e) *Disease associated with exposure to certain herbicide agents.*
> If a veteran was exposed to an herbicide agent during active . . .
> service, the following diseases shall be service[]connected if the
> requirements of § 3.307(a)(6) are met even though there is no record

of such disease during service, provided further that the rebuttable presumption provisions of § 3.307(d) are also satisfied.

. . . .

Respiratory cancers (cancer of the lung, bronchus, larynx, or trachea)[.]

38 C.F.R. § 3.309(e) (2003); *see* 38 U.S.C. § 1116(a)(2)(F), as amended by the Veterans' Benefits Improvements Act of 1994 (VBIA), Pub. L. No. 103-446, § 505, 108 Stat. 4645, 4664 (including in section 1116 disease-presumption list same respiratory cancers "becoming manifest to a degree of disability of 10 percent or more").

The Secretary's regulatory amendment that included "[r]espiratory cancers" in the presumptive-disease list was promulgated two months after the RO denied in April 1994 the veteran's claim for service connection for his left-lung-soft-tissue mass. R. at 124; 59 Fed. Reg. at 29,724. The veteran did not appeal that decision, and it thus became final. *See* 38 U.S.C. § 7105(c). After the veteran filed a claim to reopen in March 1996, the RO in the January 1997 decision (later appealed to the Board) adjudicated that claim as an original claim for "service connection" (and not as a claim to reopen) and noted the June 1994 change in law that had expanded the list of presumptive conditions in § 3.309(e). R. at 175-76. On appeal of that RO decision, the Board, in the decision now on appeal, stated that, although "it is not made clear in the record, it appears that the RO reopened the veteran's claim of entitlement to service connection . . . and denied it on the merits in its January 1997 . . . decision" (R. at 10); the Board then proceeded to adjudicate the claim as a claim to reopen (R. at 11-14).

In *Spencer v. Brown*, this Court addressed whether "when there has been an intervening liberalizing law or VA issue which may affect the disposition of the claim" VA is required "to conduct de novo review of a previously and finally denied claim"; the Court determined that although 38 U.S.C. § 5110(g) does not create such a requirement "on its face or by clear implication . . . , it appears to be contingent upon, and thus to presuppose, the existence of such a right." *Spencer*, 4 Vet.App. 283, 288 (1993), *aff'd*, 17 F.3d 368 (Fed. Cir. 1994). The Court then held:

> Where a claim is based upon a substantive right created by a statutory or regulatory provision that did not exist at the time of the prior final denial of the claim, adjudication of the latter claim is not a "reopening" of the first, such as would be prohibited, absent new and material evidence, by section 7104(b). And the fact of the intervening

15

change in law is itself sufficient to change the factual basis such that the latter claim is not "a claim based upon the same factual basis"[, 38 U.S.C. § 7104(b),] as the former claim. *Cf. Akins v. Derwinski*, 1 Vet.App. 228, 230 (1991) (holding that a presumption created by statute was itself new and material evidence).

*Spencer*, 4 Vet.App. at 289. Accordingly, in view of the intervening liberalizing regulation that in 1994 added "[r]espiratory cancers" to the § 3.309(e) list of presumptively service-connected conditions, the Board improperly adjudicated the appellant's claim as a claim to reopen, rather than as an original claim (as had the RO), and on remand must develop and readjudicate the appellant's claim accordingly. *See Spencer*, *supra*; *McCay v. Brown*, 9 Vet.App. 183, 186-88 (1996) (characterizing VA regulation promulgated pursuant to Agent Orange Act of 1994 as liberalizing regulation), *aff'd*, 106 F.3d 1577 (Fed. Cir. 1997).

**IV. Conclusion**

Upon consideration of the record on appeal, the parties' pleadings, oral argument, and the foregoing analysis, the Court vacates the April 2001 Board decision and remands the matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 5100-5103, 5103A, 5106, 5107, 7104(a), (d)(1); 38 C.F.R. § 3.159(b), (c); *DAV v. Sec'y*; *Huston*, *Charles*, *Quartuccio*, and *Spencer*, all *supra*; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) – all consistent with this opinion and in accordance with 38 U.S.C. § 7112 (as added by the Veterans Benefit Act of 2003, Pub. L. No. 108-183, § 707(b), 117 Stat. 2651, 2673) (requiring Secretary to "take such actions as may be necessary to provide for the expeditious treatment by the Board of any claim that is remanded to the Secretary by the Court"); *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (2001) (holding that VBIA § 302, 108 Stat. at 4658, the predecessor of section 7112, applies to all elements of claim remanded by the Court or Board), and with all applicable law and regulation. *See Allday v. Brown*, 7 Vet.App. 517, 533-34 (1995). On remand, the appellant will be free to submit additional evidence and argument on the remanded claim, and the Board is required to consider any such evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the

16

remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new NOA with the Court not later than 120 days after the date on which notice of the new final Board decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

   VACATED AND REMANDED.

<br>

**Separate Views**

   STEINBERG, *Judge*: Although I have not included in the Court's opinion the following analysis because it is unnecessary to the Court's holding today, I write separately to express my individual views about two matters regarding the Secretary's compliance with 38 U.S.C. § 5103(a) on remand in the instant case. The first issue is which VA entity may provide the requisite notice to the appellant on remand, and the second is which VA entity may readjudicate the claim subsequent to that notice. As to both matters, I believe that the reasoning underlying the Federal Circuit's invalidation of 38 U.S.C. § 19.9(a)(2) (2002) in *Disabled American Veterans v. Secretary of Veterans Affairs (DAV v. Sec'y)*, 327 F.3d 1339 (Fed. Cir. 2003), applies equally to the validity of division (ii) of that section as it relates to the Board's provision of section 5103(a)-complying notice and, in light of VA's current adjudication process, to the Board's subsequent adjudication of the claim without remand to an AOJ. When, as here, the AOJ has failed to provide section 5103(a)-complying notice, the Secretary has provided in § 19.9(a)(2)(ii) that the Board may "provide the notice required by [section] 5103 and/or [38 C.F.R.] § 3.159(b)(1)." 38 C.F.R. § 19.9(a)(2)(ii); *see DAV v. Sec'y*, 327 F.3d at 1348 ("if for some reason an appeal has reached the Board without the AOJ having provided the notice required by [section] 5103(a), § 19.9(a)(2)(ii) permits the Board to cure that procedural defect and to require a response period of 'not less than 30 days'"). In *DAV v. Sec'y*, however, the Federal Circuit held that "the unreasonably misleading nature of § 19.9(a)(2)(ii) [with respect to the 30-day response period], coupled with the lack of specification as to whether any evidence after the Board issues a final decision needs to meet the requirements of new and material evidence, provides sufficient grounds for us to hold the regulation contrary to [section] 5103(b)",

which "provides the claimant one year to submit evidence" after section 5103 notice is provided. *DAV v. Sec'y*, 327 F.3d at 1348-49; *id.* at 1342, 1354 (holding that § 19.9(a)(2)(ii) "is invalid" for stated reasons). *But see* Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 701(b), 117 Stat. 2651, 2670 (Dec. 16, 2003). The Federal Circuit also held in *DAV v. Sec'y*:

> 38 C.F.R. § 19.9(a)(2) is invalid because, in conjunction with the amended rule codified at 38 C.F.R. § 20.1304, it allows the Board to consider additional evidence without having to remand the case to the AOJ for initial consideration and without having to obtain the appellant's waiver. That is contrary to the requirement of 38 U.S.C. § 7104(a) that "[a]ll questions in a matter which . . . is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary."

*DAV v. Sec'y*, 327 F.3d at 1341.

As to the first issue – which VA entity may provide the notice on remand from this Court – despite the section 5103(a) direction that notice thereunder be preadjudicatory, nothing in section 5103(a) directs which VA entity – an AOJ or, for example, the Veterans Benefits Administration in VA Central Office or the Board – must provide the requisite notice with respect to a claim remanded by the Court for failure to comply with section 5103(a)'s requirements. *See* 38 U.S.C. § 5103(a) (providing that "the Secretary shall notify the claimant . . ."); *DAV v. Sec'y*, 327 F.3d at 1346-47 ("[b]y statute, the Board is an agency of the Secretary, as are the AOJs"); *cf.* 38 C.F.R. § 19.9(a)(2)(ii) (authorizing **Board** to provide section 5103(a) notice under certain circumstances). However, section 7104(a), which mandates that "[*a*]*ll questions in a matter* which . . . is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary", seems to suggest that reliance on the Board, as provided for in § 19.9(a)(2)(ii), to provide complying notice where the AOJ failed to do so[1] could, under the current VA adjudication process, deprive a claimant of the right to VA appellate review of the Secretary's compliance with the notice requirements of section 5103 and § 3.159(b)(1), because the determination whether such notice has been properly provided

---

[1] To the extent that the Secretary asserts that he provided section 5103(a)-content-complying notice by virtue of statements made at the veteran's hearing before the BVA in December 2000 (Suppl. Br. at 11-13), under *Charles v. Principi* it is the Board's responsibility to include in its statement of reasons or bases an "adequate" discussion of the duty to notify and to specify whether and, if so, how documents referred to by the Board "or any other document in the record satisfied that [notice] requirement." *Charles*, 16 Vet.App. 370, 374 (2003); *see* 38 U.S.C. § 7104(a), (d)(1).

18

is a "question[]" or issue "in a matter". *See* 38 U.S.C. § 7104(a) (emphasis added) (also charging Board with basing its decision "***upon consideration of all*** evidence and material of record and ***applicable provisions of law and regulation***" (emphasis added), including the statutory and regulatory notice requirements in section 5103(a) and § 3.159(b)(1)); *cf.* 38 U.S.C. § 7261(a)(3)(C) (providing that Secretary's regulations that are "in violation of a statutory right" be held unlawful). In other words, (1) the section 7104(a) "review on appeal" includes BVA review of compliance with process requirements just as much as it does review of an AOJ's evaluation of evidence, and (2) under the current VA adjudication process, section 7104(a) seems to require that where an AOJ has failed to provide the required notice the AOJ must do so on remand in order to ensure that a claimant has an opportunity to challenge the sufficiency of that notice on review.[2] However, I see no statutory constraints to prevent the Secretary from establishing a process by which a VA entity other than an AOJ could provide the requisite complying notice, as long as that process safeguards a claimant's right to "one review on appeal to the Secretary" as mandated in section 7104(a).[3] Otherwise, the same sort of waiver process discussed below with respect to the section 5103(a) requirement for postnotice adjudication by an AOJ may be necessary in order for the Board (or another entity other than an AOJ) to provide such notice.

As to which VA entity may then adjudicate the remanded claim after notice is provided, again, in delegating that duty, the Secretary is constrained by the section 7104(a) right of VA appellate review. However, there is certainly nothing in the statutory scheme or the Court's opinion today that would prevent the Secretary from establishing at the Board or elsewhere a process (consistent with the evolutionary process of claims development under 38 U.S.C. §§ 5102, 5103A,

---

[2] In this regard, I note that the VA General Counsel (GC) issued a precedential opinion on May 21, 2003, in which he concluded that *Disabled American Veterans v. Secretary of Veterans Affairs (DAV v. Sec'y)*, 327 F.3d 1339 (Fed. Cir. 2003), "does not preclude the Board from sending the notice required by section 5103(a)." VA Gen. Coun. Prec. Op. 1-03, para. 14 (May 21, 2003). Although that conclusion is technically correct, the GC opinion ignores the section 7104(a) right to challenge on appeal to the BVA the sufficiency of section 5103(a) notice.

[3] It is conceivable, for example, that the Secretary could require that BVA review of the sufficiency of compliance with 38 U.S.C. § 5103(a)'s processes be carried out by a Board member who had not been involved in the provision of that notice. *See* 38 C.F.R. § 19.9(a)(2) (2002) (authorizing BVA member to "[d]irect Board personnel to undertake the action essential for a proper appellate decision", including "undertak[ing] to provide the notice required by [section] 5103(a) and/or [38 C.F.R.] § 3.159(b)(1)". It is not at all clear whether the Federal Circuit's opinion in *DAV v. Sec'y*, 327 F.3d at 1341, invalidated the foregoing part of § 19.9(a)(2)(ii) or only the 30-day provision for the claimant to respond to the notice.

19

5104, 5107, and 7105) by which a claimant could waive remand of his or her claim to the AOJ for readjudication.[4] *See DAV v. Sec'y*, 327 F.3d at 1346-48 (holding that Board is not permitted consistent with 38 U.S.C. § 7104(a) to consider "additional evidence without having to remand the case to the AOJ for initial consideration and without having to obtain the appellant's waiver [of such remand]").[5] Accordingly, it appears that, under the current VA adjudication process, an informed waiver by the appellant[6] may well be necessary in order for an entity other than an AOJ to provide notice[7] or for the BVA to readjudicate his claim. In this regard, the Secretary proposed on December 11, 2003, to revise § 19.9 so as to provide for readjudication to occur at an AOJ[8] if "correction of a procedural defect . . . is essential for a proper appellate decision"[9] and also for such

---

[4] In my view, under the present statutory scheme, the provision of postremand notice is essential in order to enable a claimant to make an informed decision as to whether to elect to allow the Board to proceed with adjudication of the disputed matter or to obtain a new AOJ adjudication after receiving section 5103(a)-complying notice. *See DAV v. Sec'y*, *supra*; *cf. infra* note 6.

[5] *See also Sutton v. Brown*, 9 Vet.App. 553, 569-70 (1996) (discussing "new approach" for BVA consideration of evidence and issues not considered by AOJ, under which claimant could waive right to AOJ consideration, and discussing potential implications of such waiver); *cf.* 38 C.F.R. § 20.1304(c) (2001) (mandating referral of certain newly submitted evidence by Board to AOJ "unless this procedural right is waived by the appellant . . . [; s]uch waiver must be in writing or . . . formally entered on the record orally at the time of the hearing"); *Huston v. Principi*, 17 Vet.App. 195, 206 (2003) (vacating Board decision for "proceed[ing] to adjudicate the . . . claim in the first instance without offering to remand the question to the [Department of Veterans Affairs (VA) regional office (RO)]" because "it is possible that initial adjudication of the veteran's claim by the VARO could have precipitated further claim-development action that would have discovered that evidence and resulted in a favorable determination of his claim"). In advising a claimant of the right to waive remand to an RO for postnotice adjudication, the Secretary also could inform the claimant of the average time that AOJ readjudication would likely take in light of VA's backlog.

[6] *Cf. Janssen v. Principi*, 15 Vet.App. 370, 376 (2001) (per curiam order) (requiring that waiver of Court's consideration on appeal of procedural rights enacted in Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096, must be made by appellant who "has knowledge of certain procedural rights that he possesses and has expressed his intention clearly and unequivocally, and on the advice of competent counsel, to relinquish the Court's consideration of them in this appeal").

[7] *But see supra* note 3 (last sentence noting lack of clarity as to whether the opinion in *DAV v. Sec'y*, *supra*, invalidated all parts of 38 C.F.R. § 19.9(a)(2)(ii)).

[8] The Secretary proposes to redefine "*Agency of original jurisdiction*" in 38 C.F.R. § 20.3(a) to mean "the Department of Veterans Affairs activity or administration, that is, the Veterans Benefits Administration, Veterans Health Administration, or National Cemetery Administration, that made the initial determination on a claim." Board of Veterans' Appeals: Obtaining Evidence and Curing Procedural Defects, 68 Fed. Reg. 69,062, 69,065 (proposed Dec. 11, 2003)

[9] It is unclear to me whether under this proposed regulation the Secretary would consider the provision of section 5103(a) notice, where such notice has not been provided, to be "essential for a proper appellate decision" in every case. In this regard, I note that the existing specific reference to section 5103(a) notice in § 19.9(a)(2)(ii) would be

20

a remand to occur if "additional evidence [or] clarification of the evidence . . . is essential for a proper appellate decision" unless in the latter case the appellant waives that right in writing, pursuant to a revision to 38 C.F.R. § 20.1304(c) being proposed concurrently (or unless the BVA grants all benefits sought). Board of Veterans' Appeals: Obtaining Evidence and Curing Procedural Defects, 68 Fed. Reg. 69,062, 69,065 (proposed Dec. 11, 2003). As to the specific content of the notice that must be provided on remand under applicable law and regulation, the precise composition of the notice is best left to the Secretary to prescribe in light of the particular matter at issue in the case; it is my view, however, that the law requires notice with sufficient specificity to permit the claimant to participate meaningfully in the development of the information and evidence necessary to substantiate his or her service-connection claim. *See* 38 U.S.C. § 5103(a); 38 C.F.R. § 3.159(b). In any event, it should be clear from the Court's opinion today that AOJs cannot rely on an RO decision itself, a Statement of the Case (SOC), a Supplemental SOC, or any issuance subsequent to the initial AOJ adjudication in order to achieve timely compliance with section 5103(a) (unless perhaps another AOJ adjudication, or opportunity for one, is afforded in order to remedy such post-initial-AOJ-adjudication notice) and that, as to cases pending at AOJs when this opinion is issued (as well as to claims filed hereafter), AOJs should not rely on the BVA to provide section 5103(a) and § 3.159(b) notice.

    IVERS, *Judge*, concurring in part and dissenting in part: I concur in the Court's opinion in parts I, II, III.B., and IV, but dissent from the Court's opinion in parts III.A.1, 2.a. and b.

    As aptly put by Justice Stevens:

> The maxim that "hard cases make bad law" may also apply to easy cases. As I shall explain, this case could easily be decided by the straightforward application of well-established precedent. . . . Any proper concern about the danger that [an] opinion might be interpreted too expansively would be more appropriately addressed in a case that was either incorrectly decided or that at least raised a close or difficult question. In my judgment it is most unwise to use this case as a vehicle for substitution of a rather open-ended attempt to define [the legal issues in question] that trouble the Court.

---

deleted entirely in the proposed revised § 19.9.

*Hudson v. United States*, 522 U.S. 93, at 106-07 (1997) (Stevens, J., concurring). Such is the case here. Having determined that the appellant is entitled to a remand pursuant to *Spencer v. Brown*, 4 Vet.App. 283 (1993), in part III.B., the Court need go no further.

> This Court has discussed the need to address multiple errors when remanding a case. It has been the practice of this Court from the outset that, as a general rule, when an undoubted error requires that the Court order a remand, the Court will not address other putative errors raised by the appellant that are not necessary in effecting the proposed disposition. In short, if the proper remedy is a remand, there is no need to analyze and discuss all the other claimed errors that would result in a remedy no broader than a remand. In *Best v. Principi*, 15 Vet.App. 18 (2001) (per curiam order), the Court noted that it generally decides cases on the narrowest possible grounds, and therefore is not required to rule upon other allegations of error . . . .

*Mahl v. Principi*, 15 Vet.App. 37, 38 (2001) (per curiam order). The Court further instructed that "[c]onsidering only the issues necessary to the disposition of the case, or, in other words, deciding a case on the narrowest possible grounds, is the tradition in general appellate practice." *Id.* In *Best v. Principi*, the Court has also stated:

> The Court's practice of limiting its opinions to the issue necessary to effect a remand is consistent with the jurisdictional statute under which the Court operates. That statute states that "in any action brought under this chapter, the Court of Appeals for Veterans Claims, *to the extent necessary to its decision* and when presented shall . . . (1) decide all questions of law." 38 U.S.C. § 7261(a) (emphasis added). Of course, within the statutory definition of "to the extent necessary," there may be appropriate circumstances that would cause the Court, in its discretion, to touch upon another issue, whether raised by the appellant or not.

*Best*, 15 Vet.App. at 20.

Not all Board errors are of equal gravity. However, the majority's analysis presumes that they are. By addressing a purported VCAA notice error before acknowledging the Board's more significant failure to adjudicate the appellant's claim as a new claim in violation of *Spencer, supra*, the majority has reversed the order of importance of the Board's errors in its analysis. The Board's *Spencer* error required the appellant to overcome the significant hurdle of presenting new and material evidence *before* his final decision could be reopened and readjudication could take place. *See* 38 U.S.C. § 5108; 38 C.F.R. § 3.156(a) (2002). He would also not be entitled to all the assistance given a claimant filing a new claim. *See Paralyzed Veterans of Am. v. Sec'y Veterans Affairs*, _ F.3d _, No. 02-7007 (Fed. Cir., Sept. 22, 2003) (holding that the Secretary's regulation

excluding claims to reopen from mandatory medical examinations is valid, and that "in the absence of new and material evidence, VA is not required to provide assistance to a claimant attempting to reopen a previously disallowed claim, including providing a medical examination or obtaining a medical opinion," inter alia). Since the proper remedy for the failure to adjudicate the appellant's claim as a new one is remand, there is no need to analyze and discuss any other error that would result in a remedy no greater than a remand. *Best, supra.*

Clearly, the notice provisions of the VCAA are currently in a partial state of flux. *See* section 701 of the Veterans Benefits Act of 2003 (VBA), Public Law 108-183, 117 Stat. 2651 (Dec. 16, 2003) and proposed regulation Board of Veterans' Appeals: Obtaining Evidence and Curing Procedural Defects, 68 Fed. Reg. 69,062, 69,065 (Dec. 11, 2003)) which will be applicable to any readjudication of the appellant's claim below. On remand, the appellant will also be free to submit additional evidence and argument on the remanded claims in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order), and the Secretary will be required to address all applicable law and regulation, to include those regulations addressing notice and the requirements of the VCAA.

Despite having no compelling reason to do so, the majority has chosen to enter into a regulatory thicket recently visited by the Federal Circuit, and to some degree, by Congress. *See Disabled Am. Veterans (DAV) v. Sec'y Veterans Affairs*, 327 F.3d 1339 (Fed. Cir. 2003) and VBA section 701. The majority instructs the Secretary that, because the VCAA requires that section 5103(a) notice be given upon receipt of a complete or substantially complete application, the only remedy for an error in the notice process will be to remand the claim to the RO. Such an interpretation of section 5103(a) at this time will unnecessarily insert this Court into the regulatory process set in motion by the Federal Circuit's decision in *DAV, supra*.

The Federal Circuit invalidated regulation § 19.9(a)(2) (2002) in *DAV*, holding that

> 38 C.F.R. § 19.9(a)(2) is invalid because, in conjunction with the amended rule codified at 38 C.F.R. § 20.1304, it allows the Board to consider additional evidence without having to remand the case to the AOJ for initial consideration and without having to having to obtain the appellant's waiver. That is contrary to the requirement of 38 U.S.C. § 7104(a) that "[a]ll questions in a matter which . . . is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary."

23

*DAV*, 327 F.3d at 1341. The Federal Circuit observed that the amendment to 38 C.F.R. § 20.1304 (2002) eliminated the requirement in 38 C.F.R. § 20.1304(c) (2001) that unless the appellant waived consideration by the RO the Board must refer evidence not considered by the RO to the RO. *Id.* at 1345-46. The Federal Circuit, in its criticism and analysis of §§ 19.9(a) and 20.1304(2002), did not foreclose the ability of the Board to cure a procedural error made at the RO level. Rather, they found the absence of the ability of an appellant to choose between remand to the RO or proceeding before the Board to be problematic. The Secretary was given the opportunity to redraft the invalidated regulation.

In fact, the Secretary is now in the process of doing so. As noted above, he has presented a notice of proposed rulemaking that would amend the portions of § 19.9(a) that were invalidated in *DAV*. *See* Board of Veterans' Appeals: Obtaining Evidence and Curing Procedural Defects, 68 Fed. Reg. at 69,065. The VA General Counsel has also issued a General Counsel Opinion addressing the impact of *DAV* upon the Board's ability to cure section 5103(a) notice defects at the Board level. *See* VA Gen. Coun. Prec. 1-2003 (May 21, 2003). Neither the proposed regulation nor the precedential opinion are currently before the Court. The Court need not now insert itself into the regulatory process, the sole province of the Secretary under 38 U.S.C. § 501. While it would generally be appropriate for this Court to address and invalidate a regulation, in this case the Federal Circuit in *DAV, supra*, has invalidated that regulation. The Secretary should be allowed the opportunity to fix the problem before this Court directs a solution. Instead, the majority would require the Board to remand to the RO all claims now at the Board in which the VCAA notice was defective at the RO level.

Furthermore, parts III.A.1, 2.a. and b. of the opinion contain nothing necessary to the disposition of this case. They are, therefore, at best, dictum. BLACK'S LAW DICTIONARY defines "obiter dictum," commonly referred to as "dicta," as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)." BLACK'S LAW DICTIONARY 1100 (7th ed. 1999). Regarding dicta, this Court has observed:

24

> The danger of . . . dicta is that, although theoretically and technically not binding, practically, they give the appearance of carrying the cloak of judicial acceptance. As one scholar has stated, "Much depends on the character of the dictum. Mere obiter may be entitled to little weight, while a carefully considered statement . . . , though technically dictum, must carry great weight, and may even . . . be regarded as conclusive." CHARLES A. WRIGHT, THE LAW OF FEDERAL COURTS § 58, at 374 (4th ed. 1983); *see also McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13, 19 (1st Cir. 1991) (giving effect to considered dictum of the Supreme Court). . . . Through its dicta, the majority seeks to dictate the result of any remand to the Board.

*Lasovick v. Brown*, 6 Vet.App. 141, 153 (1994) (Ivers, J., concurring in part, dissenting in part). Such is the case here. The majority's discussion runs afoul of "[t]he danger of . . . dicta [which] is that, although theoretically and technically not binding, practically, they give the appearance of carrying the cloak of judicial acceptance," as noted in *Lasovick*, 6 Vet.App. at 153. Certainly, the majority has put the Secretary on notice as to what it believes a regulation in compliance with section 5103(a) must look like. The Court can and should decide this appeal on the narrowest grounds in accordance with general appellate practice by remanding the matter for readjudication pursuant to *Spencer*, *supra*. This is especially so in light of the abundant evidence that both the Secretary and Congress are addressing the defects identified in *DAV, supra*, and in light of the fact that none of the results of those efforts is now before the Court.

> As Justice Stevens stated, in concurring only in the judgment in *Hudson*, *supra*:

> It is of course, entirely appropriate for the Court to perform a lawmaking function as a necessary incident to its Article III responsibility for the decision of "Cases" and "Controversies." In my judgment, however, a desire to reshape the law does not provide a legitimate basis for issuing what amounts to little more than an advisory opinion that, at best, will have the precedential value of pure dictum . . . .

*Hudson*, 522 U.S. at 112 (Stevens, J., concurring). Justice Stevens went on to express great concern with the constitutional ramifications of the Supreme Court's majority opinion. His caution is well taken here. If, as I believe to be the case, the majority opinion here is dicta, then its direction to the Secretary amounts to little more than an advisory opinion and should be given the precedential value appropriate to that category of judicial utterance. For the reasons stated above, I respectfully dissent.